UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD BORELLI, CHRISTINA PITASSI, and JAMES MUNIZ, | No.  2:14-cv-02093-KJM-KJN |
| Plaintiffs, | |
| v. | ORDER |
| BLACK DIAMOND AGGREGATES, INC., and BASIC RESOURCES, INC., | |
| Defendants. | |

This matter comes before the court on the parties' cross-motions to compel arbitration.  *See* ECF Nos. 46, 53.  Defendants Black Diamond Aggregates, Inc. ("Black Diamond") and Basic Resources, Inc. ("Basic Resources") argue claims brought by plaintiffs Edward Borelli, Christina Pitassi, and James Muniz against Black Diamond should be subject to arbitration, with the claims against Basic Resources stayed pending the outcome of arbitration. Defs.' Mot. to Compel Arbitration ("Defs.' Mot."), ECF No. 46.  Plaintiffs argue they are not subject to arbitration.  Pls.' Opp'n to Defs.' Mot. (Pls.' Opp'n), ECF No. 52.  Alternatively, plaintiffs argue if they are subject to arbitration, their claims against defendant Basic Resources should be subject to arbitration as well.  Pls.' Mot. to Compel Arbitration ("Pls.' Mot."), ECF No. 53.  Defendant Basic Resources opposes plaintiffs' motion.  Defs.' Opp'n to Pls.' Mot.

1

1  (Defs.' Opp'n), ECF No. 55.  For the following reasons, the court GRANTS defendants' motion

2  to compel arbitration with plaintiffs Pitassi and Muniz, GRANTS plaintiffs' motion to compel

3  such that any arbitration will include Basic Resources as a party, and will set a focused

4  evidentiary proceeding to hear testimony as to whether plaintiff Borelli received the first page of

5  his arbitration agreement.

6  I.        BACKGROUND

7           A.      Factual Background

8                   Plaintiffs are former employees of Black Diamond, a wholly owned subsidiary of

9  Basic Resources engaged in the trucking business.  *See generally* First Am. Compl., ECF No. 37.

10  When each plaintiff began working at Black Diamond, each signed an arbitration agreement that

11  required binding arbitration of all claims arising from employment.  Gaalswyk Decl. at 1–2, ECF

12  No. 46-3.  Borelli signed his arbitration agreement on June 6, 2013.  Borelli Arbitration

13  Agreement ("Borelli Agreement"), Gaalswyk Decl. at 4–5.  Pitassi signed her arbitration

14  agreements on July 18, 2007 and March 21, 2008.  Pitassi Arbitration Agreements ("Pitassi

15  Agreements"), Gaalswyk Decl. at 6–7.  Muniz signed his arbitration agreement on May 2, 2006.

16  Muniz Arbitration Agreement ("Muniz Agreement"), Gaalswyk Decl. at 8.  The arbitration

17  agreements signed by Pitassi and Muniz contain the same language, but the language in Borelli's

18  arbitration agreement is different from the other two.  The two types of arbitration agreements are

19  described below.

20           1.      Borelli's Arbitration Agreement

21                   Borelli's employment arbitration agreement requires the parties to submit to

22  arbitration under the following terms:

23              If the parties are unable to resolve a dispute related to this
                agreement through mediation, they shall submit any such dispute
24              (whether based on contract, tort, or statute duty or prohibition
                against discrimination or harassment) to binding arbitration, in
25              accordance with the California Code of Civil Procedure §§ 1280
                through 1294.2 and the Rules of the American Arbitration
26              Association.  Either party may enforce the award of the arbitrator

27

28

2

under Code of Civil Procedure § 1285.  The parties understand that they are waiving their rights to a jury trial.[1]

Borelli Agreement.

Borelli's arbitration agreement contains the following language regarding fees and costs associated with arbitration:

> Basic Resources, Inc., shall pay the arbitrator's expenses and fees, all charges, and any other expenses that would not have been incurred if the case had been litigated in the judicial forum having jurisdiction over it.  Unless otherwise ordered by the arbitrator, each party shall pay its own attorney's fees, witness fees, and other expenses incurred by the party for his or her own benefit.
>
> The arbitrator may award the prevailing party his or her expenses and fees of arbitration, including reasonable attorneys' fees and witness fees, in such proportion as the arbitrator decides.[2]

*Id.*

Borelli's arbitration agreement includes four signature lines for the following parties: (1) "Employer"; (2) "Employee"; (3) "Witness"; and (4) "Human Resources."  *Id.*  The only signed lines are the employee line, which is signed by Borelli and dated June 6, 2013, and the witness line, which is illegible and dated 6-6-2013; the employer and human resources lines are not signed.  *See id.*

### 2. Arbitration Agreements Signed by Pitassi and Muniz

To the extent relevant to this motion, the arbitration agreements signed by Pitassi and Muniz require the parties to submit to arbitration as follows:

> The undersigned Employer and Employee understand that any and all controversies or claims arising out of, or relating to, their employment relationship, or the termination thereof, or this Employment Agreement or the breach thereof, that cannot be resolved between or among the Employee and the Employer and/or any of its representatives, agents and/or employees (including claims of discrimination), shall be submitted exclusively to binding arbitration before a neutral arbitrator in accordance with the

---

[1] This language is contained on the first page of his two-page arbitration agreement. Borelli contends he only received the second page of his arbitration agreement, which contains the signature line.  This contention is discussed in further detail below.

[2] This language is on the second page of Borelli's two-page arbitration agreement, which he concedes he received.

California Arbitration Act (Code of Civil Procedure Section 1281 et seq.) except that the Employee may seek available relief from any federal and/or state agency where the law provides for such even though the employee has signed an agreement providing that all disputes shall be resolved by final and binding arbitration.

Pitassi Agreements; Muniz Agreement.

These arbitration agreements contain the following language regarding fees and costs associated with arbitration:

The Employer shall be responsible for all fees and costs associated with the arbitration that exceed those fees and costs that the Employee would be required to bear if his or her action had been commenced in court . . . .   The arbitrator shall issue a written decision and award and shall award fees and costs in accordance with applicable law.

*Id.*

The arbitration agreements signed by Pitassi and Muniz include four signature lines for the following parties: (1) "Employer"; (2) "Employee"; (3) "Witness"; and (4) "Human Resources Director."  *Id.*  The employer, employee, and witness lines are signed on all agreements; the human resources director line is not signed.  *Id.*  Specifically, Pitassi's first and second arbitration agreements are identical except for the date.  Pitassi signed her first agreement on 7-18-2007 and her second on 3-21-2008; Ruth M. Quadroa signed and dated Pitassi's agreements on the same dates; and the employer line is signed illegibly by the same individual and not dated on either agreement.  Pitassi Agreements.  Muniz signed and dated his agreement on 5-2-2006; an individual named Donna, last name illegible, signed and dated the witness line with the same date; and the same individual who signed the employer line on Pitassi's agreement signed Muniz's agreement.  Muniz Agreement.

3.      Express Final and Binding Language

Above the signature lines, all agreements provided the following language in all-caps:

THE UNDERSIGNED PARTIES UNDERSTAND THAT THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION FOR DAMAGES ARISING OUT OF OR RELATING TO THEIR EMPLOYMENT RELATIONSHIP AND THAT ONLY THE ARBITRATOR, NOT A JUDGE OR JURY,

4

1               WILL DECIDE THE DISPUTE AND ISSUE A FINAL AND
2  BINDING DECISION AND AWARD.

3  Borelli Agreement; Pitassi Agreements; Muniz Agreement.

4         B.     <u>Procedural Background</u>

5             On September 9, 2014, Borelli filed this putative class action against Black

6  Diamond. ECF No. 1. The original action did not identify future parties Pitassi, Muniz, or Basic

7  Resources by name. *Id.* at 1. In it, Borelli made claims under the federal Fair Labor Standards

8  Act, various sections of the California Labor Code, California's Unfair Competition Law, and the

9  California Private Attorney General's Act (PAGA). *See generally id.* Borelli alleged, *inter alia*,

10 that Black Diamond failed to pay minimum wages, failed to authorize and permit paid rest

11 periods, and failed to furnish accurate wage statements. *See id.*

12            On January 22, 2015, Black Diamond filed a motion to compel arbitration. ECF

13 No. 9. On February 26, Borelli filed a motion to amend the original complaint. ECF No. 19. On

14 March 27, 2015, the court held a hearing on both motions. ECF No. 27. On September 4, 2015,

15 the court granted Borelli's motion to amend the complaint. Order at 6, ECF No. 36. In doing so,

16 the court denied Black Diamond's motion to compel arbitration as moot, subject to renewal. *Id.*

17            On September 8, 2015, Borelli filed a first amended complaint. The amended

18 complaint added James Muniz and Christina Pitassi as plaintiffs, and added Basic Resources as a

19 defendant. First Am. Compl.

20            On October 30, 2015, defendant Black Diamond renewed its motion to compel

21 arbitration, Defs.' Mot., and Basic Resources joined the motion, ECF No. 50. Plaintiffs opposed,

22 Pls.' Opp'n, and defendants replied, Defs.' Reply, ECF No. 60.

23            On December 4, 2015, plaintiffs filed their motion to compel arbitration, arguing

24 that if plaintiffs are subject to arbitration, co-defendant Basic Resources should also be subject to

25 arbitration. Pls.' Mot. at 3. Basic Resources filed an opposition, Defs.' Opp'n, and plaintiffs

26 replied, Pls.' Reply, ECF No. 59.

27

28

1    II.    DISCUSSION

2         The parties raise multiple issues in their cross-motions to compel arbitration.

3    Specifically, they dispute whether (1) the Federal Arbitration Act (FAA) or California Arbitration

4    Act (CAA) controls interpretation of the arbitration agreements; (2) the arbitration agreements are

5    valid and enforceable against plaintiffs; (3) PAGA claims are subject to arbitration under the

6    agreements; (4) the arbitration agreements are enforceable against defendant Basic Resources;

7    and (5) the action should be stayed.  The court will address each issue in turn.

8         A.    Whether the FAA or CAA Should Govern

9         The parties dispute whether the FAA or CAA governs the arbitration agreements.

10   *See* Pls.' Opp'n at 17–18; Defs.' Reply at 8–9.  Defendants argue the arbitration agreements are

11   enforceable under both the FAA and CAA.  *See* Defs.' Reply at 8.  Plaintiffs argue only the CAA

12   applies, Pls.' Opp'n at 17, and, therefore, defendants' reliance on the FAA as authority to stay the

13   proceedings against Basic Resources must fail, *id.* at 26.

14        Section 2 of the FAA provides that "an agreement in writing to submit to

15   arbitration an existing controversy arising out of . . . a contract . . . shall be valid, irrevocable, and

16   enforceable, save upon such grounds as exist at law or in equity for the revocation of any

17   contract."  9 U.S.C. § 2.  However, the FAA specifically excludes from its coverage "contracts of

18   employment of . . . any . . . class of workers engaged in . . . interstate commerce."  *Id.* § 1; *see*

19   *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001) (holding the FAA does not apply to

20   transportation workers).  This exemption applies to truck drivers engaged in interstate commerce.

21   *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir. 2001).

22        Defendants in this case acknowledge plaintiffs were hired as truck drivers, *see*

23   Gaalswyk Decl. at 1, and defendants do not dispute plaintiffs were engaged in interstate

24   commerce, *see* Borelli Decl. at 2, ECF No. 52-3 (declaring Black Diamond employees delivered

25   goods to Native American lands).  In light of plaintiffs' employment as truck drivers and the

26   interstate nature of Black Diamond's business, this court finds the FAA does not apply to the

27   arbitration agreements at issue.  *See Harden*, 249 F.3d at 1140 ("The district court lacked the

28

1    authority to compel arbitration in this case because the FAA is inapplicable to [delivery]

2    drivers.")  Accordingly, California law governs the arbitration agreements.

3              California Code of Civil Procedure section 1281.2 provides that the court must

4    determine whether the parties agreed to arbitrate and, if so, what issues are subject to arbitration.

5    *United Pub. Employees v. City & Cty. of S.F.*, 53 Cal. App. 4th 1021, 1026 (1997).  "California

6    law, like federal law, favors enforcement of valid arbitration agreements."  *Armendariz v. Found.*

7    *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (2000).  "Doubts as to whether an arbitration

8    clause applies to a particular dispute are to be resolved in favor of sending the parties to

9    arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause

10   cannot be interpreted to cover the dispute."  *Id.* (quoting *Engineers & Architects Assn. v. Cmty.*

11   *Dev. Dep't*, 30 Cal. App. 4th 644, 652 (1994)).  The policy favoring arbitration, however, applies

12   only if the court determines the parties agreed to arbitrate their disputes, which requires analysis

13   of state law principles of contract formation and interpretation.  *See Badie v. Bank of Am.*, 67 Cal.

14   App. 4th 779, 790 (1998) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

15   (1995)).  The party seeking to compel arbitration bears the burden of proving the existence of a

16   valid and enforceable arbitration agreement by a preponderance of the evidence.  *Rosenthal v.*

17   *Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 412–13 (1996).

18             Plaintiffs contend the arbitration agreements are not enforceable under the CAA

19   because (1) the agreements are not valid, and (2) even if the agreements are valid, they do not

20   cover PAGA claims.  *See* Pls.' Opp'n.  Defendants rejoin that the agreements are valid and

21   enforceable, and the agreements do not require the arbitration of PAGA claims.  *See* Defs.' Reply.

22   The court addresses these competing contentions separately.

23        B.    Validity of the Arbitration Agreements

24             "To evaluate the validity of an arbitration agreement, federal courts should apply

25   ordinary state-law principles that govern the formation of contracts."  *Ingle v. Circuit City Stores,*

26   *Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation omitted).  "Under California law, the

27   essential elements for a contract are (1) '[p]arties capable of contracting;' (2) '[t]heir consent;'

28   (3) '[a] lawful object;' and (4) '[s]ufficient cause or consideration.'"  *United States ex rel. Oliver*

7

1    *v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (alterations in original) (quoting Cal. Civ. Code

2    § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (Ct. App. 1966)).

3            Plaintiffs argue Borelli's arbitration agreement is invalid and unenforceable

4    because (1) defendants fail to meet their burden of showing Borelli entered into an arbitration

5    agreement with Black Diamond, Pls.' Opp'n at 14–15; and (2) defendants did not engage in the

6    requisite prior step of mediation with Borelli.  Plaintiffs also argue all plaintiffs' arbitration

7    agreements are invalid and unenforceable because (3) defendants committed fraud in the

8    inducement and execution of the agreements; and (4) the agreements are unconscionable.

9                    1.      Whether Borelli and Defendant(s) Agreed to Arbitrate

10           In support of their motion to compel arbitration, defendants have filed a

11   declaration signed by Henk Gaalswyk, a General Manager for Black Diamond.  *See* Gaalswyk

12   Decl.  In his capacity as General Manager, Gaalswyk oversaw the hiring and orientation process

13   for new employees from 1989 until 2015; he avers he has personal knowledge of the declared

14   facts, including that Borelli voluntarily signed the arbitration agreement.  *Id.* at 1–2.

15           Plaintiffs argue Black Diamond fails to meet its burden of showing it entered into

16   an arbitration agreement with Borelli.  Pls.' Opp'n at 14–15.  Specifically, plaintiffs contend

17   (1) Gaalswyk does not state he has first-hand knowledge of Black Diamond entering into an

18   arbitration agreement with Borelli; (2) Gaalswyk does not show how he knew it was customary

19   for Black Diamond to provide new employees with arbitration agreements, or that Black

20   Diamond followed this practice with Borelli; and (3) Borelli's arbitration agreement never

21   identifies Black Diamond as a party to the agreement.  *Id.* at 14–15.

22           Regarding plaintiffs' first and second contentions, the court can infer personal

23   knowledge from a declarant's position within a company or business.  *See In re Kaypro*, 218 F.3d

24   1070, 1075 (9th Cir. 2000) (declarant's personal knowledge of industry practice inferred from his

25   five-year tenure as credit manager; relying on interpretation of Rule 56); *Barthelemy v. Air Lines*

26   *Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (CEO's personal knowledge of various corporate

27   activities inferred from position).  In this case, because Gaalswyk held his position as a General

28   Manager from 1989 until early 2015, he can be expected to know it was customary to provide

1   new employees with arbitration agreements during the time period relevant here, between 2006

2   and 2013.  *See In re Kaypro*, 218 F.3d at 1075.  Further, Gaalswyk states Borelli's signed

3   arbitration agreement was maintained with his personnel file.  Gaalswyk Decl. at 2.  The court

4   can therefore also infer from Gaalswyk's personal knowledge of Black Diamond's business

5   practices, based on his position in the company, that the execution and maintenance of Borelli's

6   signed arbitration agreement comported with Black Diamond's ordinary method of doing

7   business.  *See In re Kaypro*, 218 F.3d at 1075 ("Kay's testimony about his own firm's business

8   practices was clearly based on personal knowledge and can be read to mean that the restructuring

9   agreements with Arrow and Schweber comported with the debtor's ordinary methods of doing

10  business.").

11          To support their third contention, that Borelli's arbitration agreement fails to

12  identify Black Diamond as a party to the agreement, plaintiffs note the arbitration agreement fails

13  to identify any employer by name, and the signature lines for both "Human Resources" and

14  "Employer" are left blank.  Pls.' Opp'n at 14.  Without an "indication as to who is entering into

15  this alleged agreement with Mr. Borelli," plaintiffs argue, "there is no enforceable agreement to

16  arbitrate."  *Id.* at 15.

17          Although an arbitration agreement must generally be memorialized in writing,

18  *Pinnacle Museum Tower Ass'n. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012),

19  the writing memorializing an arbitration agreement need not be signed by both parties in order to

20  be upheld as binding, *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (2015).

21  "[I]t is not the presence or absence of a *signature* on an agreement which is dispositive; it is the

22  presence or absence of evidence of an *agreement* to arbitrate which matters."  *Serafin*, 235 Cal.

23  App. 4th at 176 (quotations omitted; emphasis in original).

24          In this case, Borelli's arbitration agreement is an easy-to-read two page document

25  that was presented to him around the time he was hired.  *See* Gaalswyk Decl. at 1–2; Borelli

26  Agreement.  As noted, Borelli's agreement explicitly states, in capital letters, "THE

27  UNDERSIGNED PARTIES UNDERSTAND THAT THIS AGREEMENT IS A WAIVER OF

28  ALL RIGHTS TO A CIVIL COURT ACTION FOR DAMAGES ARISING OUT OF OR

9

RELATING TO THEIR EMPLOYMENT RELATIONSHIP . . . ."  Borelli Agreement; *see*

*Serafin*, 235 Cal. App. 4th at 175 (holding employee's signature on employer's "mandatory

arbitration policy" document sufficient to form  agreement to arbitrate, even though employer did

not sign document, where policy was set out in two-page, easy-to-read document).  The court

therefore finds that Borelli agreed to arbitrate matters arising out of his employment relationship

with Black Diamond.

### 2.   Duty of Defendant(s) to Mediate

Borelli argues Black Diamond cannot enforce any agreement to arbitrate because

Black Diamond initially refused the requisite pre-arbitration mediation of the dispute.  Pls.'

Opp'n at 15.  Borelli's arbitration agreement provides in relevant part, "If the parties are unable to

resolve a dispute related to this agreement through mediation, they shall submit any such

dispute . . . to binding arbitration."  Borelli Agreement.

Borelli's contention is premised on his argument that "[i]n the fall of 2014," his

counsel "proposed an early mediation," and Black Diamond's counsel responded that "she did not

have authority to agree."  Ahmad Decl. ¶ 7, ECF No. 52-1.  Borelli filed this action on September

9, 2014. ECF No. 1.  It is unclear form Borelli's filings whether he proposed mediation to Black

Diamond before filing this action.  Then, on November 3, 2014, Borelli's counsel again inquired

about mediation, and Black Diamond's counsel responded she "had not heard back from [Black

Diamond]" but would let Borelli's counsel know as soon as she did.  Ahmad Decl. ¶ 7.  On

January 8, 2015, Borelli's counsel sent a letter to Black Diamond, stating Black Diamond was

refusing to mediate.  *Id.* ¶ 9.  Black Diamond's counsel responded the next day, on January 9,

stating Black Diamond was willing to "mediate Mr. Borelli's claims at any time."  *Id.* ¶ 10; Cook

Letter January 9, 2015 at 10, ECF No. 13-1.  Black Diamond's counsel also observed that "Mr.

Borelli provide a demand [to mediate], but Mr. Borelli ha[d] not done so [at that] point."  Cook

Letter January 9, 2015 at 10.

"A bedrock principle of California contract law is that 'he who seeks to enforce a

contract must show that he has complied with the conditions and agreements of the contract on

his part to be performed.'"  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005)

1    (brackets omitted) (quoting *Pry Corp. of Am. v. Leach*, 177 Cal. App. 2d 632, 639 (1960)).  In

2    other words, a party cannot compel arbitration under an arbitration agreement when the party is

3    itself in "material breach" of that agreement.  *Dillard's, Inc.*, 430 F.3d at 1006.  Whether a

4    "breach of a contract is material depends on the importance or seriousness thereof and the

5    probability of the injured party getting substantial performance."  *Brown v. Grimes*, 192 Cal. App.

6    4th 265, 278 (2011) (quotation omitted).  "A material breach of one aspect of a contract generally

7    constitutes a material breach of the whole contract."  *Id.* at 278 (quotation omitted).

8           Here, the court can discern no material breach of the terms of the arbitration

9    agreement.  Although Borelli's arbitration agreement states that arbitration will occur "[i]f the

10   parties are unable to resolve a dispute related to this agreement through mediation," it gives no

11   timeline by which the parties are required to mediate.  Black Diamond maintains it was always

12   willing to enter into mediation, and it stated so unequivocally in January 2015.  Cook Letter

13   January 9, 2015 at 10.  Additionally, on April 3, 2015, Borelli and Black Diamond voluntarily

14   agreed to submit their dispute to mediation.  *See* Stipulation to Mediate, ECF No. 29.  Thereafter,

15   Borelli and Black Diamond unsuccessfully attempted to mediate, which satisfies the language of

16   Borelli's arbitration agreement, which, again, specifies no timeline for mediation.  *See* ECF Nos.

17   34 & 35.  Borelli's argument is without merit.

18                  3.    Fraud in the Execution and Inducement

19          Plaintiffs contend Black Diamond's attempt to exclude Basic Resources from

20   arbitration constitutes fraud in the inducement and execution of all of the arbitration clauses.  Pls.'

21   Opp'n at 15–16.  Regarding Borelli's agreement, plaintiffs claim that by identifying the

22   participants in the agreement as "the parties," and by mandating a waiver of all rights to a civil

23   court action arising from the employment relationship, defendants misled Borelli into believing

24   the agreement would provide an opportunity to bring arbitration claims against Basic Resources

25   as well as Black Diamond.  *Id.* at 16 (quoting Borelli Agreement).  Regarding the agreements

26   signed by Pitassi and Muniz, plaintiffs claim defendants misled them into believing the following

27   phrase provided an opportunity to bring arbitration claims against Basic Resources:

28

1
2
3
4

> The undersigned Employer and Employee understand that any and all controversies or claims *arising out of, or relating to, their employment relationship* . . . that cannot be resolved between or among the Employee and the Employer *and/or any of its representatives, agents* and/or employees . . . shall be submitted exclusively to binding arbitration . . . .

5  *Id.* (emphasis in original) (quoting Pitassi Agreements; Muniz Agreement).  In essence, plaintiffs

6  contend Black Diamond led plaintiffs to believe Basic Resources was a party to the arbitration

7  agreement.  By precluding Basic Resources as a party, plaintiffs argue the execution of and

8  inducement to enter into the agreements constitutes fraud.  Pls.' Opp'n at 15–16.

9            "California law distinguishes between fraud in the 'execution' or 'inception' of a

10  contract and fraud in the 'inducement' of a contract."  *Rosenthal*, 14 Cal. 4th at 415.  "[W]hen a

11  plaintiff alleges fraud in the execution, the plaintiff is asserting that it was deceived as to the very

12  nature of contract execution, and did not know what it was signing."  *Brown v. Wells Fargo Bank,*

13  *NA*, 168 Cal. App. 4th 938, 958 (2008).  "If the fraud goes to the execution or inception of the

14  contract, so that the promisors do not know what they are signing, the contract lacks mutual

15  assent and is void."  *Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 50 Cal.

16  4th 913, 921 (2010).  In contrast, "[w]hen a plaintiff alleges fraud in the inducement, the plaintiff

17  is asserting that it understood the contract it was signing, but that its consent to the contract was

18  induced by fraud."  *Id.* at 921.  Additionally, California law distinguishes between fraudulently

19  inducing consent to an arbitration agreement and fraudulently inducing consent to the contract as

20  a whole.  *Larian v. Larian*, 123 Cal. App. 4th 751, 762 (2004).  The court decides whether there

21  was fraud in the inducement of an agreement to arbitrate.  *Id.* at 762.  Absent a showing of fraud

22  in the inducement to arbitrate, the arbiter decides whether there was fraud in the inducement to all

23  other contractual provisions.  *See id.*

24            Regarding fraud in the execution, plaintiffs neither contend they did not know

25  what they were signing nor do they contend they were deceived as to the nature of the execution.

26  Each plaintiff received an agreement at the beginning of his or her employment term, and the

27  agreement expressly stated a plaintiff understood he or she was waiving his or her right to a jury

28  trial.  Gaalswyk Decl. at 1.  No facts indicate any plaintiff lacked a reasonable opportunity to

1   learn the character of documents he or she signed.  *See Riverisland Cold Storage, Inc. v. Fresno-*

2   *Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1183 n.11 (2013) ("[N]egligent failure to acquaint

3   oneself with the contents of a written agreement precludes a finding that the contract is void for

4   fraud in the execution.").  At best, plaintiffs' argument reveals they contest defendants'

5   interpretation of the arbitration agreement.  The evidence does not support plaintiffs' argument of

6   fraud in the execution.

7           Regarding fraud in the inducement, plaintiffs must show, by a preponderance of

8   the evidence, "that fraud was directed to the arbitration clause itself."  *Ericksen, Arbuthnot,*

9   *McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 319 (1983) (quoting *Prima*

10  *Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)).  In other words, plaintiffs

11  must show Black Diamond induced plaintiffs into the arbitration agreement by fraudulently

12  misrepresenting to plaintiffs that Basic Resources would arbitrate any claims related to the

13  employment agreement.  *See Hotels Nevada v. L.A. Pac. Ctr., Inc.*, 144 Cal. App. 4th 754, 761

14  (2006) (observing that party alleging fraud has burden of proof by preponderance of evidence).

15  Plaintiffs fail to meet this burden.  Although plaintiffs argue Black Diamond and Basic Resources

16  were alter egos, as discussed below, plaintiffs have presented no evidence that Black Diamond

17  fraudulently misrepresented its relationship with Basic Resources and intended to induce

18  plaintiffs' reliance based on this misrepresentation.  *See Engalla v. Permanente Med. Grp., Inc.*,

19  15 Cal. 4th 951, 976 (1997) ("A fraudulent state of mind includes not only knowledge of falsity

20  of the misrepresentation but also an intent to induce reliance on it." (quotes omitted)).  Also, even

21  if, *arguendo*, Black Diamond made misrepresentations to plaintiffs, plaintiffs have not shown that

22  those misrepresentations "played a substantial part, and so [were] a substantial factor, in

23  influencing [plaintiffs'] decision" to arbitrate.  *See id.* at 976–77.

24          Plaintiffs' fraud-based arguments are therefore not sustainable.

25          4.      Unconscionability

26          Plaintiffs also contend all the arbitration agreements are unenforceable because

27  they are procedurally and substantively unconscionable.  Pls.' Opp'n at 20.  "Because

28  unconscionability is a generally applicable defense to contracts, California courts may refuse to

                                        13

1    enforce an unconscionable arbitration agreement." *Ingle*, 328 F.3d at 1170; *accord Kinney v.*

2    *United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1328–29 (1999).  The party seeking to

3    establish an unconscionability defense must do so by a preponderance of the evidence.  *Peng v.*

4    *First Republic Bank*, 219 Cal. App. 4th 1462, 1468 (2013); *Serafin*, 235 Cal. App. 4th at 173.

5    "[A] contract to arbitrate is unenforceable under the doctrine of unconscionability when there is

6    both a procedural and substantive element of unconscionability[, though] procedural and

7    substantive unconscionability need not be present in the same degree." *Ingle*, 328 F.3d at 1170

8    (internal quotations omitted) (citing *Armendariz*, 24 Cal. 4th at 114).  "In other words, the more

9    substantively oppressive the contract term, the less evidence of procedural unconscionability is

10   required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*,

11   24 Cal. 4th 83 at 114.

12          The court analyzes the alleged procedural and substantive unconscionability

13   separately below.

14                    a)      Procedural Unconscionability

15          Under California Law, "[a] contract is procedurally unconscionable if it is a

16   contract of adhesion, i.e., a standardized contract, drafted by the party of superior bargaining

17   strength, that relegates to the subscribing party only the opportunity to adhere to the contract or

18   reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at

19   115).  Procedural unconscionability focuses on two factors in the contracting process: oppression

20   and surprise.  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010); *accord Stirlen v.*

21   *Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1531 (1997).  "Oppression addresses the weaker party's

22   absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Pokorny*,

23   601 F.3d at 996 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)).

24   "Surprise involves the extent to which the contract clearly discloses its terms as well as the

25   reasonable expectations of the weaker party." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916,

26   922 (9th Cir. 2013) (citing *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1570 (2009)); *see*

27   *also Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 247 ("[S]urprise [occurs] where the allegedly

28   unconscionable provision is hidden within a prolix printed form.").

(1)     Oppression

In this case, the contracting process is fairly characterized as oppressive because plaintiffs were in a substantially weaker bargaining position than defendants.  Plaintiffs were employed as truck drivers and were not represented by a union.  *See* Borelli Decl. ¶ 5.  Black Diamond, a subsidiary of Basic Resources, was an experienced employer that drafted the arbitration contracts.  *See generally* Gaalswyk Decl. at 1–2.  Black Diamond "asked [plaintiffs] to sign" contracts the company "routinely provided new employees."  *Id.* at 2.  "Black Diamond considered arbitration to be the superior means of resolving [employment] disputes."  *Id.* Defendants focus their attention on the ease of understanding the arbitration agreement; they do not argue plaintiffs had an opportunity to negotiate the terms of the agreement, or that defendants presented the contract on anything other than a take-it-or-leave-it basis.  *See* Defs.' Reply at 12; *see also Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 114 (2004) (finding employment contract adhesive where arbitration agreement was presented as a specific "condition of employment"); *Villa Milano Homeowners Ass'n v. Il Davorge*, 84 Cal. App. 4th 819, 827 (2000) ("[I]n a given case, a contract might be adhesive even if the weaker party could reject the terms and go elsewhere."); *Stirlen*, 51 Cal. App. 4th at 1533–34 (noting that even though sophisticated corporate executive "was not a person desperately seeking employment," the employment contract was procedurally unconscionable because it was presented on a "take it or leave it basis").  Oppression alone is enough under California law to establish procedural unconscionability.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (citing California appellate court cases).  The arbitration agreements in this case are procedurally unconscionable.  In considering the degree of procedural unconscionability, the court analyzes surprise as well.

(2)     Surprise

Regarding surprise, plaintiffs argue they were unfairly surprised because they were not provided with the American Arbitration Association ("AAA") rules referenced in the arbitration agreements.  Pls.' Opp'n at 22; *see* Defs.' Reply at 13 (implicitly acknowledging plaintiffs were not provided with AAA rules).  Although failure to provide employees "with a

15

1    copy of the AAA rules supports a determination that the arbitration agreement as a whole [is]

2    procedurally unconscionable," "failure to attach the applicable AAA rules alone [does] not render

3    the agreement procedurally unconscionable." *Serafin*, 235 Cal. App. 4th at 180 (quotations

4    omitted; emphasis added).  "As with any contract, the unconscionability inquiry requires a court

5    to examine the totality of the agreement's substantive terms *as well as the circumstances of its*

6    *formation* to determine whether the overall bargain was unreasonably one-sided." *Id.* at 180

7    (emphasis in original) (quoting *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1146

8    (2013)).

9            Plaintiffs contend only that defendants failed to provide them copies of the AAA

10   rules.  Plaintiffs do not say whether defendants failed to discuss or explain the AAA rules at the

11   time of signing or later during the employment.  *See* Pls.' Opp'n at 21.  Regarding Borelli's

12   agreement, Borelli argues he was unfairly surprised because he was not provided with the first

13   page of the arbitration agreement, which "contain[s] the reference to the AAA rules, the

14   limitations on discovery, and the provision of an unreasonably expedited proceeding."  Pls.'

15   Opp'n at 22; *see* Borelli Decl. ¶ 3.  Defendants counter he did receive the first page, and his

16   argument is "not tenable" under the circumstances.  Defs.' Reply at 8; *see* Gaalswyk Decl. ¶ 2.

17   Borelli's contention that he did not receive the first page of the agreement, if credible, would

18   weigh strongly in favor of surprise and procedural unconscionability.  The court notes that the

19   second page of the agreement is not obviously a second page such that Borelli would have been

20   alerted that the document was incomplete.  *See Net Glob. Mktg., Inc. v. Dialtone, Inc.*, 217 F.

21   App'x 598, 601 (9th Cir. 2007).  For example, there is no clear heading, and the second page

22   begins at the start of a new paragraph, not mid-sentence or mid-paragraph.  *See* Borelli

23   Agreement.

24          Regarding Pitassi and Muniz, the agreements they signed do not reference

25   compliance with the AAA rules. *See* Pitassi Agreements; Muniz Agreement.  Moreover, the text

26   of the CAA on which they rely makes no reference to the AAA.  *See* Cal. Civ. Proc. Code § 1280

27   *et seq.*  As such, Pitassi and Muniz's argument that they were unfairly surprised by not receiving

28

a copy of the AAA rules is implausible.  Accordingly, Black Diamond's failure to provide Pitassi

and Muniz with the AAA rules does not weigh in favor of a finding of surprise.

(3)      Conclusion

In sum, although Pitassi and Muniz have not shown surprise due to Black

Diamond not providing them with a copy of the AAA rules, plaintiffs have shown all the

arbitration agreements in this case were "oppressive" contracts of adhesion.  While the evidence

of procedural unconscionability for the agreements signed by these two plaintiffs appears

minimal, it is enough to proceed to the second 'substantive' prong of the unconscionability

analysis.  *See Serafin*, 235 Cal. App. 4th at 181 ("Under the sliding-scale approach, [plaintiffs

must] make a strong showing of substantive unconscionability to render [Pitassi and Muniz's]

arbitration provision[s] unenforceable." (citing *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th

771, 796 (2012)).

As for Borelli, the degree to which his arbitration agreement is procedurally

unconscionable depends on whether he received the first page of the agreement.  Given the

uncertainty raised by the record, the court will "hear oral testimony and allow the parties the

opportunity for cross-examination" on the issue.  *Rosenthal*, 14 Cal. 4th at 414 ("[W]e agree that

where . . . the enforceability of an arbitration clause may depend upon which of two sharply

conflicting factual accounts is to be believed, the better course would normally be for the trial

court to hear oral testimony and allow the parties the opportunity for cross-examination.").

The court next proceeds to the substantive prong of the unconscionability analysis.

b)      <u>Substantive Unconscionability</u>

"Substantive unconscionability centers on the 'terms of the agreement and whether

those terms are so one-sided as to shock the conscience.'"  *Ingle*, 328 F.3d at 1172 (quoting

*Kinney*, 70 Cal. App. 4th at 1330).  "In evaluating the substance of a contract, courts must analyze

the contract 'as of the time it was made.'"  *Id.* (quoting *A & M Produce Co*, 135 Cal. App. 3d at

487).  Plaintiffs contend all the arbitration agreements in this case are one-sided because they lack

mutuality in their obligation to arbitrate.  Pls.' Opp'n at 22.  In other words, plaintiffs contend the

arbitration agreement requires the employee but not the employer to arbitrate employment

1  disputes because the employer and/or human resources signature lines on the arbitration

2  agreements remain unsigned. *Id.*

3        While a "modicum of bilaterality" is required in an arbitration agreement,

4  *Armendariz*, 24 Cal. 4th at 119, as noted above, "the writing memorializing an arbitration

5  agreement need not be signed by both parties in order to be upheld as a binding arbitration

6  agreement," *Serafin*, 235 Cal. App. 4th at 176. As California courts reason,

7
> 'it is not the presence or absence of a *signature* on an agreement
8
> which is dispositive; it is the presence or absence of evidence of an
> *agreement* to arbitrate which matters.' Evidence confirming the
9
> existence of an agreement to arbitrate, despite an unsigned
> agreement, can be based, for example, on 'conduct from which one
10
> could imply either ratification or implied acceptance of such a
> provision.'

11  *Serafin*, 235 Cal. App. 4th at 176 (emphases in original) (quoting *Banner Entm't, Inc. v. Superior*

12  *Court*, 62 Cal. App. 4th 348, 361 (1998)).

13        The court readily dispenses with plaintiffs' argument regarding the arbitration

14  agreements signed by Pitassi and Muniz. *See id.* Those agreements are signed by the employer,

15  employee, and a witness; only the "Human Resources Director" line remains unsigned, and

16  plaintiffs have not shown how the absence of this signature undermines the parties' agreement to

17  arbitrate. Additionally, the court notes that these agreements bear a stamp on the top left corner

18  of each page that reads "Black Diamond Aggregates, Inc." Pitassi Agreements; Muniz

19  Agreement. The first line of the agreements reads, "The undersigned Employer and Employee

20  understand that any and all controversies or claims arising out of, or relating to, their employment

21  relationship, or the termination thereof, . . . shall be submitted exclusively to binding

22  arbitration . . ." *Id.* This expansive language indicates the arbitration agreements are meant to

23  "be fully mutual in scope." *Serafin*, 235 Cal. App. 4th at 182.

24        Borelli's arbitration agreement also does not lack mutuality, if it is determined he

25  saw the first page. Even though the "Employer" and "Human Resources" lines remain unsigned,

26  the "Witness" line is signed, though the signature is illegible. As Pitassi's and Muniz's

27  agreements, Borelli's agreement contains the following expansive language: "If the parties are

28  unable to resolve a dispute . . . they shall submit any such dispute (whether based on contract,

1    tort, or statute duty or prohibition against discrimination or harassment) to binding

2    arbitration . . . ."  Borelli Agreement.  Therefore, Borelli's arbitration agreement also appears to

3    "be fully mutual in scope."  *Serafin*, 235 Cal. App. 4th at 182.

4         Plaintiffs also contend Borelli's arbitration agreement is substantively

5    unconscionable because his agreement requires the losing party to pay the prevailing party's

6    attorneys' fees and potentially all arbitration fees, which are expenses he would not be required to

7    bear if the action were brought in court.  Pls.' Opp'n at 23–24.  Plaintiffs are correct.  In

8    California, employers imposing a mandatory arbitration agreement as a condition of employment

9    cannot require employees to bear expenses in arbitration they would not bear if the action were

10   brought in court.  *Armendariz*, 24 Cal. 4th at 110–11.  Were defendants to prevail in the present

11   action, they would not be able to recover attorneys' fees on any claim.  *See Aleman v. AirTouch*

12   *Cellular*, 209 Cal. App. 4th 556, 580 (2012) (Cal. Labor Code section 1194 "allows only a

13   prevailing plaintiff to recover fees.").  However, plaintiffs' argument regarding an arbitrator's

14   expenses is misplaced.  It is true any provision requiring the employee to pay the arbitrator's

15   expenses would be unconscionable.  *See Chavarria*, 733 F.3d at 925 (9th Cir. 2013) (finding an

16   arbitration agreement that required the employee to bear the cost of arbitration  to have "no place

17   in employment claims governed by state law").  But Borelli's agreement expressly provides that

18   "Basic Resources, Inc., shall pay the arbitrator's expenses and fees."  Borelli Agreement.

19        Based on the foregoing, the agreements signed by Pitassi and Muniz are not

20   substantively unconscionable.  The portion of Borelli's agreement that shifts the burden for

21   payment of attorneys' fees is substantively unconscionable.  The court thus analyzes whether this

22   portion of Borelli's agreement can be severed, if his agreement is otherwise valid.

23              c)        Severance of Unconscionable Provisions

24        "[A] court should sever an unconscionable provision [of an arbitration agreement]

25   unless the agreement is so 'permeated' by unconscionability that it cannot be cured by

26   severance."  *Serafin*, 235 Cal. App. 4th at 183–84.  As California courts have explained,

27        [a]n arbitration agreement can be considered permeated by
     unconscionability if it contains more than one unlawful provision.
28        Such multiple defects indicate a systematic effort to impose

                                        19

arbitration not simply as an alternative to litigation, but as an inferior forum that works to the stronger party's advantage. The overarching inquiry is whether the interests of justice would be furthered by severance.

*Serafin*, 235 Cal. App. 4th at 184 (internal quotations and changes omitted).

Because the court found the provision of Borelli's arbitration agreement concerning attorneys' fees to be substantively unconscionable, the court shall sever that provision from the contract in the interest of justice. Also, as stated above, the court will hear oral testimony and allow the parties the opportunity for cross-examination on the issue of whether Borelli received the first page of his arbitration agreement—a factual dispute that is dispositive to the court's determination of the enforceability of the remainder of the arbitration agreement.

C.    Arbitrability of PAGA Claims

The PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 360 (2014), *cert. denied*, 135 S. Ct. 1155 (2015). Plaintiffs rely solely on the California Supreme Court's decision in *Iskanian* to support their contention that "[a]n employee cannot be compelled to arbitrate his or her PAGA claims." Pls.' Opp'n at 19. Plaintiffs' reading of *Iskanian* is overbroad. The Ninth Circuit has observed that the "decision in *Iskanian* expresses no preference regarding whether individual PAGA claims are litigated or arbitrated. [The *Iskanian* decision] provides only that representative PAGA claims may not be waived outright." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 434 (9th Cir. 2015) (citing *Iskanian*, 59 Cal. 4th at 384); *see also Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 978–79 (N.D. Cal. 2015) (finding PAGA claims may be arbitrated despite their "qui tam" nature); *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1067 (N.D. Cal. 2015) (unenforceability of PAGA waiver "does not necessarily dictate which forum is proper for their adjudication"); *but see Tanguilig v. Bloomingdale's, Inc.*, 5 Cal. App. 5th 665, 678 (2016) ("Because a PAGA plaintiff . . . acts as a proxy for the state only with the state's acquiescence [ ] and seeks civil penalties largely payable to the state via a judgment

20

1    that will be binding on the state, the PAGA claim cannot be ordered to arbitration without the

2    state's consent.").

3              Nonetheless, defendants concede in their reply that in formulating the arbitration

4    agreements, defendants did not contemplate a requirement that PAGA claims be arbitrated.  *See*

5    Defs.' Reply at 9.  Given the derivative nature of PAGA claims, a stay is appropriate.  *Leyva v.*

6    *Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  The court shall therefore

7    stay the PAGA claims of any plaintiffs against whom arbitration is compelled, pending arbitration

8    of the other claims.

9              D.      Plaintiffs' Motion to Compel Arbitration against Basic Resources

10             Plaintiffs make three alternative arguments in support of their motion to compel

11   Basic Resources participation in arbitration: (1) Basic Resources meets the criteria of a joint

12   employer; (2) Basic Resources was Black Diamond's agent; or (3) Basic Resources and Black

13   Diamond are alter egos.

14             It is undisputed that Basic Resources is not a signatory to the arbitration

15   agreements.  *See* Pls.' Reply at 8; Defs.' Opp'n at 2.  Generally, only parties to an arbitration

16   agreement can be compelled to arbitrate.  *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036 (2007);

17   *see Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003) ("Arbitration

18   agreements apply to non-signatories only in rare circumstances.").  However, "non-signatories of

19   arbitration agreements may be bound by the agreement under ordinary contract and agency

20   principles."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Letizia v.*

21   *Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)).  These exceptions are

22   grounded in state contract principles, and include "(1) incorporation by reference; (2) assumption;

23   (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."  *Comer*, 436 F.3d at 1101 (quoting

24   *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).  The party

25   seeking to enforce a contract against a non-signatory bears the burden of showing one of these

26   exceptions applies.  *See Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 437 (1984).

27             Plaintiffs' argument that Basic Resources meets the criteria of a joint employer

28   does not fall under one of the *Comer* exceptions.  Plaintiffs' second argument is that an agency

relationship existed between Basic Resources and Black Diamond.  Pls.' Reply at 10–11.  Under

California law, "a non-signatory to an agreement to arbitrate may be required to arbitrate . . . if a

preexisting confidential relationship, such as an agency relationship between the non-signatory

and one of the parties to the arbitration agreement, makes it equitable to impose the duty to

arbitrate upon the non-signatory."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013)

(quoting *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759,

765 (2005)).  An essential element of agency is a showing that the principal maintained control

over the agent's actions.  *Id.* at 1232 (citing *Desuza v. Andersack*, 63 Cal. App. 3d 694, 699 (Ct.

App. 1976) ("The right of the alleged principal to control the behavior of the alleged agent is an

essential element which must be factually present in order to establish the existence of agency,

and has long been recognized as such.")).  In this case, plaintiffs argue Basic Resources exercised

control over employees in various ways, such as controlling employees' wages.  *See* Pls.' Mot. at

6.  However, plaintiffs do not argue or show Basic Resources exercised control over Black

Diamond, or vice versa.  Thus, plaintiffs have not shown the existence of an agency relationship.

Plaintiffs also argue Basic Resources is an alter ego of Black Diamond relying on

the fourth *Comer* factor.  Pls.' Reply at 11–12.  Under California law, two conditions must be

satisfied to establish applicability of the alter ego doctrine:

> First, there must be such a unity of interest and ownership between
> the corporation and its equitable owner that the separate
> personalities of the corporation and the shareholder do not in reality
> exist. Second, there must be an inequitable result if the acts in
> question are treated as those of the corporation alone.

*Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000); *see also Greenspan*

*v. LADT, LLC*, 191 Cal. App. 4th 486, 513 (2010) (listing fourteen "not exhaustive" factors that

courts "may" consider "among others under the particular circumstances of each case").  "Alter

ego is an extreme remedy, sparingly used."  *Sonora Diamond Corp.*, 83 Cal. App. 4th at 539

(citing *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).  "The essence of the alter ego

doctrine is that justice be done.  Liability is imposed to reach an equitable result."  *Greenspan*,

191 Cal. App. 4th at 511 (changes omitted) (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290,

301 (1985)).

1    In this case, there is evidence suggesting Basic Resources and Black Diamond

2    operated as a single enterprise without separate personalities.  In plaintiffs' personnel records, the

3    name "Basic Resources" or the initials "BRI" appears on at least 143 of the 760 pages.  Ahmad

4    Decl. ¶¶ 14–15.  Basic Resources managed plaintiffs' benefits and human resources, payroll

5    questions, and other personnel issues for Black Diamond.  Decls. Abrahamson, Ducot, Fatheree,

6    Frago, Hammons, Macias, Muniz, and Pitassi ("Driver Decls.") ¶ 3, ECF Nos. 53-5 to 53-11.

7    Additionally, the same individuals own both Black Diamond and Basic Resources.  *Id.*

8    Employees received benefits information that identified Basic Resources as their employer.  *Id.*

9    The human resources personnel who assisted employees identified themselves as employees of

10   Basic Resources.  *Id.*  Both Black Diamond and Basic Resources exercised control over

11   employees by requiring employees to follow workplace instructions and directives from both

12   companies.  *See id.*; *see also Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531

13   (2014) ("[T]he principal test of an employment relationship [under common law] is whether the

14   person to whom service is rendered has the right to control the manner and means of

15   accomplishing the result desired.").  These facts show Basic Resources exercised control over

16   Black Diamond that is "'so pervasive and continual' that [Black Diamond] is but the . . .

17   instrumentality of [Basic Resources] even though separate corporate formalities are maintained."

18   *F. Hoffman-La Roche, Inc. v. Superior Court*, 130 Cal. App. 4th 782, 798 (2005) (quoting *Sonora*

19   *Diamond Corp.*, 83 Cal. App. 4th at 541).  Because Basic Resources controlled these employees'

20   human resources, the employees were required to follow workplace instructions from both

21   companies, and the employees received benefits information that identified Basic Resources as

22   their employer, this court is persuaded that Basic Resources "in effect [took] over performance of

23   [Black Diamond]'s day-to-day operations."  *Id.* at 798 (emphasis omitted) (quoting *Sonora*

24   *Diamond Corp.*, 83 Cal. App. 4th at 542).

25   Additionally, the arbitration agreements themselves support plaintiffs' argument

26   that Black Diamond and Basic Resources were alter egos.  As noted, Borelli's arbitration

27   agreement provides that "Basic Resources, Inc., shall pay the arbitrator's expenses and fees."

28   Borelli Agreement.  Notably, Black Diamond's name appears nowhere in Borelli's arbitration

1   agreement.  All agreements have an unsigned line for "Human Resources" or "Human Resources

2   Director."  Borelli Agreement; Pitassi Agreements; Muniz Agreement.  These facts also support

3   an inference that Basic Resources did more than dictate Black Diamond's general policies; it

4   controlled "how the company will be operated on a day-to-day basis" such that they were

5   effectively alter egos.  *Calvert*, 875 F. Supp. at 679 (quotation omitted).

6          Because Black Diamond and Basic Resources are alter egos, this court finds that

7   "adherence to the fiction of the separate existence of the corporation would, under the particular

8   circumstances, sanction a fraud or promote injustice."  *Talbot v. Fresno-Pac. Corp.*, 181 Cal.

9   App. 2d 425, 431 (1960); *accord Minifie v. Rowley*, 187 Cal. 481, 487 (1921).  For the foregoing

10  reasons, the court GRANTS plaintiffs' motion to compel arbitration against Basic Resources.

11          E.       Motion to Stay Arbitration

12          Given the court's decision to enforce arbitration against Basic Resources,

13  defendants' argument to stay proceedings against Basic Resources is dismissed as moot.

14  III.   CONCLUSION

15          For the foregoing reasons, the court holds the following:

16          1.       Defendants' motion to compel arbitration as to plaintiffs Pitassi and Muniz

17                   is GRANTED.

18          2.       Plaintiffs' motion to compel arbitration against defendant Basic Resources

19                   is GRANTED with respect to the arbitration to be held subject to the

20                   court's grant of defendants' motion.

21          3.       The court will hold a focused evidentiary hearing to take testimony on the

22                   issue of whether Borelli received the first page of his arbitration agreement.

23          4.       The court STAYS the PAGA claims of plaintiffs Pitassi and Muniz.

24          5.       Defendants' motion to stay proceedings against Basic Resources is

25                   DISMISSED as moot.

26          This order resolves ECF Nos. 46 and 53.

27          IT IS SO ORDERED.

28  DATED:  March 20, 2017

                                            _____
                                            UNITED STATES DISTRICT JUDGE

                                            24