UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Edward Borelli, et al., | No. 2:14-cv-02093-KJM-KJN |
| Plaintiffs, | ORDER |
| v. | |
| Black Diamond Aggregates, Inc., et al., | |
| Defendants. | |

Several former employees of Black Diamond Aggregates, Inc. are pursuing wage and hour claims on behalf of a putative class against the company and its parent, Basic Resources, Inc. The parties have reached a settlement agreement, and the matter is before the court on the plaintiffs' unopposed motion for preliminary approval of the class and collective action settlement. *See* Mot., ECF No. 87; Stmts. Non-Opp'n, ECF Nos. 96, 97. The motion was submitted without argument and is **granted** for the reasons provided in this order.

**I.      BACKGROUND**

According to the operative complaint, Black Diamond used a compensation scheme that paid drivers less than minimum wages and wrongfully withheld pay for required rest breaks and other working time. *See, e.g.*, First Am. Compl. ¶¶ 30, 39, 44, 48, 64. The complaint also includes claims for wrongfully withheld meal breaks, faulty pay stubs, and related wage and hour

/////

1

claims, among others. *See, e.g., id.* ¶¶ 55, 59. It seeks certification of a class action as well as a collective action under the federal Fair Labor Standards Act (FLSA). *See id.* ¶¶ 16–24, 27–34.

Black Diamond successfully moved to compel arbitration in 2017. *See* Order, ECF No. 67. The court also compelled Basic Resources to participate in the arbitration, finding the two companies were alter egos. *See id.* at 21–22. While the arbitration was still ongoing, the parties participated in mediation with Lisa Klerman, a mediator whom California district courts have described as "experienced" and "well-respected" in wage and hour class actions. Sohnen Decl. ¶ 15, ECF No. 87-2; *see also, e.g., De Leon v. Ricoh USA, Inc.*, No. 18-03725, 2019 WL 6311379, at *1 (N.D. Cal. Nov. 25, 2019); *Galarza v. Kloeckner Metals Corp.*, No. 17-4910, 2019 WL 8886020, at *8 (C.D. Cal. Feb. 4, 2019). The parties eventually reached an agreement to settle on behalf of all former Black Diamond truck drivers with the same wage and hour claims. *See* Settlement Agmt., Sohnen Decl. Ex. A, ECF No. 87-2.

The agreement creates three overlapping subclasses of former Black Diamond employees: one with claims under California labor law, a second with federal FLSA claims, and a third with claims under the California Private Attorneys General Act (PAGA). *See id.* ¶¶ 63–65. In total the class includes 85 drivers who worked at Black Diamond between 2010 and 2014, when the company ceased operations. *See* Sohnen Decl. ¶¶ 18, 31. Black Diamond and Basic Resources agree to pay $340,000 to settle these claims. Settlement Agmt ¶ 70.c. Of that sum, the parties agree that up to $112,000 may cover attorneys' fees, $12,000 may be allocated to costs, and $7,500 will be paid to each of the three named plaintiffs as service awards. *See id.* ¶¶ 70.f–h. The parties estimate $5,200 will be paid to administer the settlement. *See id.* ¶ 70.g. The settlement amount will be reduced by any resulting payroll taxes, approximately $11,300, and a $7,500 payment to the California Labor and Workforce Development Agency (LWDA), as required by the California Labor Code. *See id.* ¶ 70.e; Cal. Lab. Code § 2699(i). These deductions would result in a net settlement amount of approximately $169,300, slightly less than half the gross. Mem. P&A at 12 n.9, ECF No. 87-1.

The parties propose that notice be given to class members and money distributed from the net settlement fund using the contact information in Black Diamond's employment records. *See*

Settlement Agmt. ¶¶ 79–91 & Exs. A & B. Members of the putative Rule 23 subclass may opt out or object, *see id.* ¶¶ 93–96; members of the FLSA collective action must either opt in or have previously consented as provided in the FLSA, *see id.* ¶ 70.e.iv; *see also Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018); and membership in the PAGA subclass is automatic under California law, *see Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015). No class member will receive less than $25.00. *See id.* ¶ 70.e.v. The parties propose that any unclaimed funds be paid *cy pres* to the Salvation Army in Modesto. *Id.* ¶ 70.i.

The plaintiffs move for preliminary approval of the class and collective claims and of the settlement agreement under Federal Rule of Civil Procedure 23 and the FLSA. ECF No. 87. The motion is unopposed. ECF Nos. 96, 97.

## II.   LEGAL STANDARD

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). In settlement classes, the class's motivations may not perfectly square with those of its attorneys. *See id.* An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay an adversary a bit more if the overall deal is better for the client. *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class can be "a vehicle for collusive settlements that primarily serve the interests of defendants—by granting expansive protection from law suits—and of plaintiffs' counsel—by generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome claims."). In addition, if the settlement agreement is negotiated before the class is certified, as it was in this case, the potential for an attorney's breach of fiduciary duty looms larger still. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

/////

As the Ninth Circuit has recognized, however, the "governing principles may be clear, but their application is painstakingly fact-specific," and the court normally sees only the final result of the parties' bargaining. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Id.* Federal courts have long recognized a "strong" policy in favor of settling class actions." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

The plaintiffs here request both preliminary approval to represent a class under Rule 23 and conditional certification of an FLSA collective action. Different legal standards apply to these requests.

Under Rule 23, before notice of a proposed settlement can be sent to a class, the court must determine that it "will likely be able to" both (1) "certify the class for purposes of the judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). The first requirement, likelihood of class certification, requires the plaintiffs to satisfy the four prerequisites of Rule 23(a) and show their claim fits within one of the three categories of Rule 23(b). *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020). The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of the settlement for absent class members. The court evaluates preliminarily whether the proposed settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such as whether the parties negotiated at arm's length and the terms of any agreement on fee awards. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D). Over the years, the Ninth Circuit has also listed several "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength of the plaintiffs' case and the amount of fees in proportion to the compensation to class members. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 & nn.18–19 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*, 139 S. Ct. 2645 (2019).

/////

The requirements for certification of FLSA collective actions, by contrast, have developed through decisional law.  Litigation normally proceeds in two phases: first, as here, in response to a plaintiff's motion for preliminary certification, when the court applies a "lenient" standard to decide whether notice may be given to those who may opt into the collective action, and second in response to a post-discovery motion to decertify, to which a summary-judgment-like evidentiary standard applies.  *See Campbell*, 903 F.3d at 1109, 1119.  At both stages, the members of the collective action must be "similarly situated" to the original plaintiff or plaintiffs. *Id.* at 1109 (citing 29 U.S.C. § 216(b)).  "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

If FLSA claims are settled, the settlement must be approved by either the Secretary of Labor or a federal district court.  *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (unpublished) (citing *Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)).  In the absence of Supreme Court or Ninth Circuit guidance, district courts often assess whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  A dispute is "bona fide" if there are "legitimate questions" about the defendant's FLSA liability.  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).  Courts often consider many of the same factors that guide preliminary certification of Rule 23 class actions. *See Maciel v. Bar 20 Dairy, LLC*, No. 17-00902, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018).

The notice requirements of Rule 23 and the FLSA also differ.  For classes likely to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The notice may be made by mail, electronic means, "or other appropriate means." *Id.*  Rule 23 also imposes specific requirements on the contents of the notice.  *See* Fed. R. Civ. P. 23(b)(2)(B)(i)–(vii).  The FLSA is less specific.  It provides that "[n]o employee shall be a party plaintiff to any such action unless

5

he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have understood this language as requiring written consent filed with the court, albeit not articulating this understanding in formal holdings. *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("[E]mployees . . . become parties to a collective action only by filing written consent with the court." (citation omitted)).

### III. DISCUSSION

#### A. Likelihood of Certification Under Rule 23(a) and (b)

The first question here is whether certification is likely under Rule 23, which in turn imposes four prerequisites. Numerosity is the first. Class litigation is desirable when claimants are "so numerous that joinder . . . is impracticable." Fed. R. Civ. P. 23(a)(1). Joinder is "impracticable" when it is difficult or inconvenient. *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2019 WL 280294, at *4 (E.D. Cal. Jan. 22, 2019) (citing *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)). Although "no fixed number . . . satisfie[s] the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012). Here the class includes more than 80 members. It is sufficiently numerous.

Commonality is the second prerequisite. To satisfy the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Cases that challenge "a system-wide practice or policy that affects all of the putative class members" often satisfy this standard. *Franco v. Ruiz Food Prods., Inc.*, No. 10-02354, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). That is likely to be true in this case. The plaintiffs, all former truck drivers for Black Diamond, allege its wage and labor policies deprived them of minimum wages and other rights guaranteed by

California law. Their complaint identifies many common questions of law and fact. *See* First Am. Compl. ¶ 19. At this preliminary stage, the commonality across these claims suffices. *See Smothers*, 2019 WL 280294, at *4–5 (finding similar common questions about employer's policies and plaintiffs' wage and hour claims under California law satisfied Rule 23(a)(2)).

The third prerequisite is typicality. Typicality requires that "the claims or defenses of representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This ensures "the interest[s] of the named representative align . . . with the interests of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Claims and defenses are "typical if they are reasonably coextensive with those of absent class members; they need not be "substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct . . . not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres*, 835 F.3d at 1141 (quoting *Hanon*, 976 F.2d at 508). The named plaintiffs' claims are likely to be typical here because they allege the same injuries based on the same alleged conduct, which is allegedly identical for all members of the class. *See* First Am. Compl. ¶ 20.

Under the fourth prerequisite, due process requires that representatives of the proposed class afford adequate representation to those class members who are absent. *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). Courts consider two questions: first, whether there are any conflicts of interest between plaintiffs and other class members, and second, whether the named plaintiffs and their counsel can be expected to "prosecute the action vigorously on behalf of the class." *Id.* The named plaintiffs here have already each devoted many hours of their own time to this case. *See* Borelli Decl. ¶ 9, ECF No. 87-3; Pitassi Decl. ¶ 9, ECF No. 87-4; Muniz Decl. ¶ 9, ECF No. 87-5. Counsel has experience in wage and hour litigation and has devoted many hundreds of hours of work to this matter. *See generally* Sohnen Decl. Nothing in the record suggests any conflicts of interest, which seem unlikely to have

/////

developed in any event, given the shared history and circumstances common to the named plaintiffs and the unnamed class members they seek to represent.

The plaintiffs' claims here are thus likely to satisfy the four prerequisites of Rule 23(a). Rule 23(b) is next. The plaintiffs request certification under Rule 23(b)(3). *See* Mem. P&A at 9. A Rule 23(b)(3) class may be certified only if (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and internal quotation marks omitted). "The superiority inquiry . . . requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (citation omitted). Rule 23 lists "non-exclusive factors" to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1023.

Wage and hour class actions are likely to be certified under this standard when "the major questions in [the] case arise from [the defendant's] alleged uniform failure to properly calculate wages and overtime, account for meal periods and rest periods, and provide reimbursements." *Smothers*, 2019 WL 280294, at *7. This may be true even when some factual questions call for individualized evidence. *See, e.g.*, *Pena v. Taylor Farms Pacific*, 305 F.R.D. 197, 213–22 (E.D.

Cal. 2015), *aff'd*, 690 F. App'x 526 (2017), *cert. denied*, 138 S. Ct. 976 (2018).  An employer's uniform policies often predominate when they apply to all of the putative class and when class members did or do the same or similar work.  *See, e.g.*, *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 965–66 (9th Cir. 2013); *Smothers*, 2019 WL 280294, at *7.

This case shares the required characteristics.  The plaintiffs allege they and the putative class members were all truck drivers for the same company during the same four years and were all subject to the same wage and time policies, which, they claim, violated California law.  At this stage, this case appears to involve none of individualized factual disputes that have derailed other motions to certify wage and hour classes.  *See, e.g.*, *Pena*, 305 F.R.D. at 210–11 (denying certification in part due to testimonial inconsistencies and other person-to-person differences related to allegedly uncompensated labor).  Nor does the record suggest any class member will have an interest in controlling the litigation individually, *see* Fed. R. Civ. P. 23(b)(3)(A), because, for example, some claims are much larger or more complex than others.  The dollar amounts at issue here—as little as $25 per class member—are likely smaller than the costs of individual litigation.  *See, e.g.*, *Pena*, 305 F.R.S. at 220 ("Rule 23(b)(3) contemplates the 'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997))); *see also Kempen v. Matheson Tri-Gas, Inc.*, No. 15-00660, 2016 WL 4073336, at *7 (N.D. Cal. Aug. 1, 2016) (finding estimated recovery of $50 for one class and $500 for the other "suggest that the incentive to litigate any individual claim is low and that class treatment is superior").  The parties have not described and the court is not aware of any other related litigation.  *See* Fed. R. Civ. P. 23(b)(3)(B).  Additionally, this District encompasses Modesto, where Black Diamond had its principal place of business.  *See* First Am. Compl. ¶ 6; Fed. R. Civ. P. 23(b)(3)(C).  Finally, any "likely difficulties in managing a class action" pose no concerns here because this case will not be tried, *see Amchem*, 521 U.S. at 619, and Black Diamond's employment records appear sufficient to locate class members and calculate settlement payments, *see* Mem. P&A at 5.

/////

In sum, in light of these considerations, the proposed class is likely to be certified at this preliminary stage.

**B.  Likelihood of Approval Under Rule 23(e)**

Likely certification is only the first step to preliminary approval under Rule 23.  The second is the agreement's likely compliance with Rule 23(e)(2), which requires the court to decide whether the settlement is "fair, reasonable, and adequate" after considering whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

   (i)  the costs, risks, and delay of trial and appeal;

   (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Ninth Circuit decisions predating this rule lists several similar factors for district courts to consider when weighing a proposed settlement agreement:

- "the strength of the plaintiffs' case";
- "the risk, expense, complexity, and likely duration of further litigation";
- "the risk of maintaining class action status throughout the trial";
- "the amount offered in settlement";
- "the extent of discovery completed and the stage of the proceedings";
- "the experience and views of counsel";
- "the presence of a governmental participant"; and
- "the reaction of the class members to the proposed settlement."

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ.

P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) were not intended to "displace" factors identified in existing judicial decisions).

When, as here, a settlement agreement has been negotiated before a class has been certified, the court must also "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *In re Volkswagen*, 895 F.3d at 610–11 (quoting *Bluetooth*, 654 F.3d at 946–47). Three oft-cited "red flags" of unfair settlements are (1) fees that make up a disproportionately large part of the distribution to the class, (2) "clear sailing" agreements "providing for the payment of attorneys' fees separate and apart from class funds" without defense objections and (3) agreements that permit unpaid fees to revert to defendants. *Bluetooth*, 654 F.3d at 947 (citations omitted).

Several of the factors the court references in its evaluation suggest the settlement agreement here is fair. The parties litigated over the arbitration clause, participated in arbitration, undertook discovery during the arbitration, and went to mediation with an experienced third-party neutral. They reached an agreement only after a day-long in-person meeting and one month of follow-up negotiations. These circumstances suggest negotiations were at arm's length and in good faith. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). The named plaintiffs have also each devoted many hours of their own time to the litigation and arbitration, as discussed above, and their attorneys vigorously contested Black Diamond's motion to compel arbitration. Plaintiffs also secured Basic Resources' participation in the arbitration and mediation as an alter ego of Black Diamond. This supports a conclusion that the named plaintiffs and their counsel are dedicated and competent. The proposed agreement also treats similar class members similarly, with the exception of the proposed service awards discussed below, and ensures that each receives at least a small award using Black Diamond's employment records. Counsel believes the settlement is fair. And finally, a settlement would make potentially costly and time-consuming arbitration unnecessary.

Other factors, however, suggest caution is warranted. According to the complaint, for years Black Diamond's drivers were paid less than minimum wages, were not compensated for all

of their time on the job, were not offered all of the meal and rest breaks guaranteed by California law, and did not receive wage statements that complied with California law. But the total gross settlement fund amounts to only, and exactly, $1,000 per year per class member.[1] Plaintiffs' counsel has submitted a declaration with claim-by-claim estimates of the defendants' exposure. *See* Sohnen Decl. ¶¶ 22–33. According to his estimate, a full recovery would be more than $1.6 million. *See id.* ¶ 32. But under the proposed settlement agreement, class members would receive only about $169,300, or 11 percent of that amount. *See id.*

Counsel excuses this discount as necessary to account for the risks inherent in further litigation, chief among them that "the only solvent Defendant in the suit," Basic Resources, "would not be found liable." *Id.* Many of the plaintiffs' claims also carry specific evidentiary and legal risks, such as low survey response rates, which might prevent the plaintiffs from establishing the amount of any uncompensated time, *id.* ¶ 24; the potential for enforcement of agreements for on-duty meal breaks between Black Diamond and its drivers, which might preclude any recoveries related to those breaks, *see id.* ¶ 26; the possible preemption of California labor regulations by federal law or regulations, which might make California law inapplicable, *see id.* ¶¶ 26, 27; and a possible finding that Black Diamond did not act willfully, which could limit penalties, *see, e.g.*, *id.* ¶¶ 25, 28. Risks such as these may justify a significant discount. *See, e.g.*, *Smothers*, 2019 WL 280294, at *12. But here, the court will require a more searching analysis of these risks before granting final certification and directs the *in camera* submission of their confidential mediation briefs with a motion for final approval. *See, e.g.*, *id.* (reviewing parties' mediation briefs *in camera*).

In addition, a significant portion of the proposed discounted settlement amount is not actually the result of any of the risks reviewed above, but rather flows from the subtraction of $112,200 in fees, $22,500 in incentive awards, and $12,000 in estimated costs. And Black

---

[1] According to the operative complaint and counsel's declaration, the class would include 85 former Black Diamond drivers who worked at the company during the four-year period between September 2010 and October 2014. *See* First Am. Compl. ¶ 8; Sohnen Decl. ¶ 18. The gross settlement amount is $340,000. Sohnen Decl. ¶ 19. Dividing $340,000 by 85 and again by 4 is $1,000.

Diamond and Basic Resources have agreed not to oppose these requests. *See* Settlement Agmt. ¶ 70.f. As a result, each of the absent class members would be giving up more than $1,317 to cover attorneys' fees, more than $277 to cover incentive awards to the three named plaintiffs, and more than $141 to cover estimated costs, more than $1,700 in total. Yet, the average distribution to class members would be less than $2,000.[2] Some might even receive only $25. *See* Settlement Agmt. ¶ 70.e.v.

Under the scrutiny the court engages in here, the parties' proposals raise red flags. *See Bluetooth*, 654 F.3d at 947. First, the amount of the fee award is a relatively large percentage, 33 percent, of even the gross award. The Ninth Circuit recognizes a 25 percent benchmark in common fund cases, allowing departures only if properly supported and justified. *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (unpublished). The record here does not include that support and justification. Counsel's primary support for the size of the fee is a brief tabulation of their total hours, rates, and fees of more than $770,000, which, they argue, shows that a request for $112,200 is actually quite heavily discounted. *See* Sohnen Decl. Ex. C, ECF No. 87-2; Mem. P&A at 15–18. Counsel's summary tables raise as many questions as they answer. For example, the tables show that three law firms, seven attorneys and five paralegals spent more than 1,700 hours litigating this case on the plaintiffs' behalf through February 2020 without any hour-by-hour or task-by-task breakdown. *See id.* Without more information, the court can conclude neither that the proposed fee is reasonable nor that counsel's hours and rates could serve as a useful cross-check for the 33 percent fee award. The court will require far greater support before final approval can be granted.

The proposed incentive awards are also cause for concern. As described above, they grant the named plaintiffs $7,500 plus an average recovery of about $2,000, more than triple the approximately $2,000 absent class members would receive on average. Such large incentive

---

[2] $112,200 in fees among 85 class members is $1,317.65. $7,500 in service awards to three named plaintiffs is $22,500, which among 82 absent class members is $274.39. $12,000 in costs divided among 85 class members is $141.18. Together these amounts are $1,733.22. The total net settlement, $169,300.00, divided among 85 class members, is $1,991.76.

awards set the named plaintiffs apart from the absent class members; a plaintiff who stands to receive several thousand dollars extra has an incentive to support agreements that are unfair to absent class members. *See Radcliffe*, 715 F.3d at 1165 ("Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness . . . ."). For that reason, although the Ninth Circuit has agreed that incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (quoting *Staton*, 327 F.3d at 975. The Circuit has regularly reversed excessive awards. *See id.* at 1163–64 (citing *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012), *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009), *and Staton*, 327 F.3d 938). Here the court will also require greater support before final approval can be granted.

   These concerns are compounded by the defendants' agreement not to oppose the requests for fees, costs and incentive awards. "Clear sailing" provisions such as these might allow "a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Bluetooth*, 654 F.3d at 947 (quoting *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)).

   That said, any of the agreed fees, costs and incentive payments not awarded to the plaintiffs and their counsel would be returned to the class as a whole or paid *cy pres* to the Salvation Army. Settlement Agmt. ¶¶ 9, 10, 15, 70.i. This fact, along with the absence of any other indication counsel and the named plaintiffs have shirked their responsibilities to the absent class members, appears to mitigate the negative implications of the fee and incentive award proposals. *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478, at *5–7 (E.D. Cal. Aug. 27, 2019). Still, the court can offer no assurance that the proposed fee and incentive awards ultimately will be approved. *See id.* (granting preliminary approval but deferring a decision on fees and incentive awards).

/////

The court is mindful of the "strong judicial policy favor[ing] settlement of class actions." *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at 1276). For that reason, the court concludes that the agreement is likely to be approved under Rule 23(e)(2) if the concerns expressed above can be resolved at the final approval stage. At a minimum, the court will require a more searching analysis of (1) the risks of further litigation, including by *in camera* review of the parties' mediation briefs; (2) support and justification for attorneys' fees greater than the 25 percent benchmark, including sufficient information to perform a lodestar cross-check; and (3) greater support for the requested incentive awards to the named class members.

### C. Preliminary Certification and Approval Under the FLSA

The court concludes for similar reasons that the members of the proposed FLSA collective action are similarly situated. *See Campbell*, 903 F.3d at 1109; First Am. Compl. ¶ 27 (alleging plaintiffs and absent class members were subject to common policies and the same employment practices resulted in wages lower than the federal minimum). These commonalities suffice at this stage. *See Smothers*, 2019 WL 280294, at *8 (finding notice could be sent to FLSA collective because it was made up of employees who were compensated in same manner, were subject to same policies, and were allegedly denied minimum wages for same reasons); *Kempen*, 2016 WL 4073336, at *4 (conditionally certifying FLSA collective action because complaint alleged "non-exempt delivery drivers were subject to a common policy . . . that did not factor in bonus pay into the putative class's overtime pay rate").

Here, the court finds at this preliminary stage that the settlement agreement is likely to embody "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under *Lynn's Food Stores*, 679 F.2d at 1355. The factors described in the previous section support this preliminary conclusion, but final approval will depend on the resolution of the same concerns described above.

### D. Notice

The parties have proposed a combined notice of the proposed settlement for sending to all three subclasses. *See* Settlement Agmt. Ex. A. They have also proposed a combined form for submitting claims and opting into the FLSA class. *See id.* Ex. B. The notice explains the nature

of the case, the class definition, and the claims; that the recipient may opt out of the California subclass and may opt into the federal subclass and that inclusion in the PAGA is automatic; how to opt in or opt out; and the binding effect of participating in the class or collective action. *Id.* Its language is sufficiently clear and plain. The court therefore concludes the proposed notice satisfies the requirements of Rule 23(b)(2)(B) and 29 U.S.C. § 216(b). The court will, however, strictly enforce the filing requirement of § 216(b). *Cf. Smothers*, 2019 WL 280294, at *12 ("[O]ne way the parties may [comply with this requirement] is by directing putative FLSA Group members to send opt-in forms to the settlement administrator and then having plaintiffs file those opt-in forms with this court.").

## IV.   CONCLUSION

The motion for preliminary approval is **granted.** The court adopts paragraphs 1–8, 10–12, 17, and 18 of the proposed order at ECF No. 87-6, which are incorporated here by reference.

The plaintiffs are directed to give notice **within fourteen days** of a final approval hearing, which must occur on an available civil law and motion calendar date.

This order resolves ECF No. 87.

IT IS SO ORDERED.

DATED: May 20, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE