1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Edward Borelli, et al.,                    No. 2:14-cv-02093-KJM-KJN

12              Plaintiffs,                      ORDER

13        v.

14   Black Diamond Aggregates, Inc., et al.,

15              Defendants.

16

17        The plaintiffs move for class certification and final approval of a settlement agreement in

18   this action for violations of the Fair Labor Standards Act and California wage and hour laws.

19   Plaintiffs' counsel also requests an award of reasonable attorneys' fees.  The proposed class meets

20   the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3), so the court certifies it.  The

21   proposed settlement is fair and adequate, so the court approves it.  The court also finds the

22   proposed fee award to be reasonable, as explained below.  The motions are thus **granted**.

23   I.      **BACKGROUND**

24        The court summarized the plaintiffs' allegations, the history of this litigation, and the

25   terms of the proposed settlement agreement in a previous order, as follows:

26              According to the operative complaint, Black Diamond used a
27              compensation scheme that paid drivers less than minimum wages and
28              wrongfully withheld pay for required rest breaks and other working
29              time.  *See, e.g.*, First Am. Compl. ¶¶ 30, 39, 44, 48, 64.  The

1

complaint also includes claims for wrongfully withheld meal breaks, faulty pay stubs, and related wage and hour claims, among others. *See, e.g., id.* ¶¶ 55, 59.  It seeks certification of a class action as well as a collective action under the federal Fair Labor Standards Act (FLSA).  *See id.* ¶¶ 16–24, 27–34.

Black Diamond successfully moved to compel arbitration in 2017. *See* Order, ECF No. 67.  The court also compelled Basic Resources to participate in the arbitration, finding the two companies were alter egos.  *See id.* at 21–22.  While the arbitration was still ongoing, the parties participated in mediation with Lisa Klerman, a mediator whom California district courts have described as "experienced" and "well-respected" in wage and hour class actions. Sohnen Decl. ¶ 15, ECF No. 87-2; *see also, e.g., De Leon v. Ricoh USA, Inc.*, No. 18-03725, 2019 WL 6311379, at *1 (N.D. Cal. Nov. 25, 2019); *Galarza v. Kloeckner Metals Corp.*, No. 17-4910, 2019 WL 8886020, at *8 (C.D. Cal. Feb. 4, 2019).   The parties eventually reached an agreement to settle on behalf of all former Black Diamond truck drivers with the same wage and hour claims.  *See* Settlement Agmt., Sohnen Decl. Ex. A, ECF No. 87-2.

The agreement creates three overlapping subclasses of former Black Diamond employees: one with claims under California labor law, a second with federal FLSA claims, and a third with claims under the California Private Attorneys General Act (PAGA).  *See id.* ¶¶ 63–65. In total the class includes 85 drivers who worked at Black Diamond between 2010 and 2014, when the company ceased operations.  *See* Sohnen Decl. ¶¶ 18, 31.  Black Diamond and Basic Resources agree to pay $340,000 to settle these claims.  Settlement Agmt. ¶ 70.c.  Of that sum, the parties agree that up to $112,000 may cover attorneys' fees, $12,000 may be allocated to costs, and $7,500 will be paid to each of the three named plaintiffs as service awards.  *See id.* ¶¶ 70.f– h.   The parties estimate $5,200 will be paid to administer the settlement.  *See id.* ¶ 70.g.  The settlement amount will be reduced by any resulting payroll taxes, approximately $11,300, and a $7,500 payment to the California Labor and Workforce Development Agency (LWDA), as required by the California Labor Code.  *See id.* ¶ 70.e; Cal. Lab. Code § 2699(i).  These deductions would result in a net settlement amount of approximately $169,300, slightly less than half the gross. Mem. P.&A. at 12 n.9, ECF No. 87-1.  [Today, the settlement administrator estimates the total net settlement amount is slightly lower: $167,167.50.  Mem. Approv. at 10 n.7, ECF No. 106.]

The parties propose[d] that notice be given to class members and money distributed from the net settlement fund using the contact information in Black Diamond's employment records.   *See* Settlement Agmt. ¶¶ 79–91 & Exs. A & B.  Members of the putative Rule 23 subclass [could] opt out or object, *see id.* ¶¶ 93–96; members

1      of the FLSA collective action [were required to] either opt in or
2      [consent] as provided in the FLSA, *see id.* ¶ 70.e.iv; *see also*
3      *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir.
4      2018); and membership in the PAGA subclass is automatic under
5      California law, *see Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d
6      425, 436 (9th Cir. 2015).  No class member [would] receive less than
7      $25.00.  *See id.* ¶ 70.e.v.  The parties propose[d] that any unclaimed
8      funds be paid *cy pres* to the Salvation Army in Modesto.  *Id.* ¶ 70.i.

9  Prev. Order at 1–3, ECF No. 103 (with update on net settlement amount in brackets).

10        The court preliminarily approved the proposed settlement.  First, the court found the

11  proposed Rule 23 class was likely to both meet the four prerequisites of Rule 23(a), *id.* at 6–8,

12  and to satisfy the requirements of Rule 23(b)(3), *id.* at 8–10.  Several aspects of the proposed

13  settlement agreement supported the plaintiffs' belief the agreement was fair and reasonable:

14      The parties litigated over the arbitration clause, participated in
15      arbitration, undertook discovery during the arbitration, and went to
16      mediation with an experienced third-party neutral.  They reached an
17      agreement only after a day-long in-person meeting and one month of
18      follow-up negotiations. . . . The named plaintiffs have also each
19      devoted many hours of their own time to the litigation and
20      arbitration, . . . and their attorneys vigorously contested Black
21      Diamond's motion to compel arbitration.  Plaintiffs also secured
22      Basic Resources' participation in the arbitration and mediation as an
23      alter ego of Black Diamond. . . . The proposed agreement also treats
24      similar class members similarly, with the exception of the proposed
25      service awards . . . , and ensures that each receives at least a small
26      award using Black Diamond's employment records.  Counsel
27      believes the settlement is fair.  And finally, a settlement would make
28      potentially costly and time-consuming arbitration unnecessary.

29  *Id.* at 11.

30        Other aspects of the proposed agreement, however, gave the court concern.  First,

31  according to an estimate by plaintiffs' counsel, a full recovery would have been worth more than

32  $1.6 million, but under the proposed settlement agreement, class members would receive only

33  about $170,000.  *Id.* at 12.  The court found this discount might ultimately prove reasonable given

34  a number of legal and evidentiary risks counsel cataloged in a declaration, but required "a more

35  searching analysis of those risks before granting final certification."  *Id.*

36  */////*

3

1    Second, a portion of the difference between the net award and the maximum potential

2    award flowed "from the subtraction of $112,200 in fees, $22,500 in incentive awards, and

3    $12,000 in estimated costs." *Id.* The defendants agreed not to contest those amounts. *Id.* at 12–

4    13. As a result, on average, class members each would be giving up about $1,700 to cover fees,

5    costs, and incentive awards, and they would receive average distributions of about $2,000. *See*

6    *id.* at 13. Some might receive only $25. *Id.*

7    Third, the 33 percent fee award made up a relatively large percentage of the total gross

8    award, higher than the 25 percent benchmark against which such awards are normally measured.

9    *Id.* at 13. Based on the record at the time, the court could not conclude that this departure was

10   justified. *Id.* The summaries of attorney hours and rates counsel filed in support of their request

11   motion did not include enough detail to permit a useful cross check against a "lodestar" award

12   amount. *See id.*

13   Fourth, the court expressed concern regarding the proposed incentive awards. *See id.* at

14   13–14. The named plaintiffs would each receive $7,500, much more than the average recovery

15   amount. *See id.* at 13. The court required "greater support" for the proposed incentive award

16   before giving final approval. *Id.* at 14.

17   These concerns were "compounded by the defendants' agreement not to oppose the

18   requests for fees, costs and incentive awards." *Id.* The court nevertheless granted preliminary

19   approval after considering (1) the parties' agreement that any fees and incentive payments not

20   paid out would revert to the class or would be paid *cy pres* to the Salvation Army, (2) the absence

21   of any other indication counsel and the named plaintiffs [had] shirked their responsibilities to the

22   absent class members," and (3) the "strong judicial policy favoring settlement of class actions."

23   *Id.* at 14 (alterations, citations, quotation marks omitted).

24   Finally, the court certified the proposed FLSA collective action on a preliminary basis for

25   the same reasons, *id.* at 15, and approved the parties' proposed notice, *id.* at 15–16.

26   Plaintiffs then arranged for notice to be sent to the proposed class members. Brunner

27   Decl. ¶ 9, ECF No. 106-2. None objected to the proposed class action, none opted out, and only

28   one claimant disputed the worksheets used to calculate the pro rata awards. *See id.* ¶¶ 12, 14–17;

4

1    Second Suppl. Sohnen Decl. ¶ 5, ECF No. 107.  The claims administrator rejected the dispute as

2    unsubstantiated.  *See* Second Suppl. Sohnen Decl. ¶ 5.  Of the 66 former employees who were

3    eligible to participate in the FLSA collective action, 42 opted in.  *Id.* ¶ 4.  With these final counts,

4    according to data provided by the settlement administrator, the average recovery per proposed

5    class member would be a little more than $2,000, not including incentive payments.  Brunner

6    Decl. ¶ 13.  The maximum recovery would be almost $6,000 (to Christiana Pitassi, one of the

7    named plaintiffs, again, not including incentive payments), and no class member would receive

8    less than $25.  *Id.*  The other two named plaintiffs would receive $1,305.36 and $5,172.62,

9    respectively.  *Id.*

10        The plaintiffs now move for final approval and certification, and they request an award of

11   $112,200, the maximum fee to which the defendants agreed not to object.  *See* Mot. Approv.,

12   ECF No. 104; Mem. Approv., ECF No. 106; Mot. Fees, ECF No. 105; Mem. Fees, ECF No. 105-

13   1.  Counsel also lodged confidential copies of the parties' mediations briefs, which the court has

14   reviewed *in camera*.  The defendants do not oppose the pending motions.  The court held a

15   hearing on October 8, 2021.  Hr'g Min., ECF No. 110.  Harvey Sohnen appeared for the

16   plaintiffs, Barbara Cotter appeared for Black Diamond, and Bryan Hawkins appeared for Basic

17   Resources.

## II.   RULE 23 CLASS

19        "Rule 23 governs class certification."  *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1066

20   (9th Cir. 2021).  "As a threshold matter, a class must first meet the four requirements of Rule

21   23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Id.*

22   "In addition . . . , the class must meet the requirements of at least one of the 'three different types

23   of classes' set forth in Rule 23(b)."  *Id.* (quoting *Senne v. Kansas City Royals Baseball Corp.*,

24   934 F.3d 918, 927 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 248 (2020)).  For classes proposed

25   under Rule 23(b)(3), such as the proposed class in this case, "a court must find that 'the questions

26   of law or fact common to class members predominate over any questions affecting only individual

27   members, and that a class action is superior to other available methods for fairly and efficiently

28   adjudicating the controversy.'"  *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).  "This 'inquiry focuses on

1  the relationship between the common and individual issues and 'tests whether proposed classes

2  are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Vinole v.*

3  *Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009)).

4         For the reasons explained in this court's previous order, the proposed classes meet the

5  requirements of Rule 23.  No new evidence or other developments suggest otherwise.  No

6  proposed class member has objected or opted out.  The proposed class is **certified**.

7         Class claims may be settled, but "only with the court's approval," Fed. R. Civ. P. 23(e):

8              If the proposal would bind class members, the court may approve it
9              only after a hearing and only on finding that it is fair, reasonable, and
10             adequate after considering whether:

11                    (A) the class representatives and class counsel have
12                    adequately represented the class;

13                    (B) the proposal was negotiated at arm's length;

14                    (C) the relief provided for the class is adequate, taking into
15                    account:

16                           (i) the costs, risks, and delay of trial and appeal;

17                           (ii) the effectiveness of any proposed method of
18                           distributing relief to the class, including the method
19                           of processing class-member claims;

20                           (iii) the terms of any proposed award of attorney's
21                           fees, including timing of payment; and

22                           (iv) any agreement required to be identified under
23                           Rule 23(e)(3); and

24                    (D) the proposal treats class members equitably relative to
25                    each other.

26  Fed. R. Civ. P. 23(e)(2).

27         "In this Circuit, a district court examining whether a proposed settlement comports with

28  Rule 23(e)(2) is guided by the eight '*Churchill* factors'":

29                    (1) the strength of the plaintiff's case;

30                    (2) the risk, expense, complexity, and likely duration of further
31                    litigation;

6

1          (3) the risk of maintaining class action status throughout the trial;

2          (4) the amount offered in settlement;

3          (5) the extent of discovery completed and the stage of the
4               proceedings;

5          (6) the experience and views of counsel;

6          (7) the presence of a governmental participant; and

7          (8) the reaction of the class members of the proposed settlement.

8    *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (line breaks added) (quoting *In re Bluetooth*

9    *Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011), in turn quoting *Churchill Vill. v. Gen.*

10   *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

11         The Ninth Circuit recently made clear that Rule 23(e) "imposes on district courts an

12   independent obligation to ensure that any class settlement is 'fair, reasonable, and adequate,'

13   accounting for the interests of absent class members." *Briseño v. Henderson*, 998 F.3d 1014,

14   1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)).  District courts must "ensure that [any

15   attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already

16   agreed to an amount." *Id.* (alteration in original) (quoting *Bluetooth*, 654 F.3d at 941).  "In other

17   words, . . . Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's

18   fees' vis-à-vis the 'relief provided for the class' in determining whether the settlement is

19   'adequate' for class members. *Id.* at 1024.  A district court must therefore "scrutinize fee

20   arrangements" to determine if class members have been "shortchanged" as a result of "collusion."

21   *Id.* at 1026.  Three "red flags" might reveal collusion: "(1) a handsome fee award despite little to

22   no monetary distribution for the class, (2) a 'clear sailing' provision under which defendant

23   agrees not to object to the attorneys' fees sought, and (3) an agreement that fees not awarded will

24   revert to the defendant, not the class fund." *Kim*, 8 F.4th at 1180.

25         Now, as when this court granted the motion for preliminary approval, several aspects of

26   the proposed settlement agreement weigh in favor of approving it finally.

27   /////

28   /////

1     First, the named plaintiffs have represented the class adequately.  *See* Fed. R. Civ. P.

2  23(e)(2)(A).  The individual named plaintiffs[1] have devoted dozens of hours to this case,

3  including by participating in discovery and assisting class counsel in developing their case.  *See*

4  *generally* Borelli Decl, ECF No. 87-3; Pitassi Decl., ECF No. 87-4; Muniz Decl., ECF No. 87-5;

5  *see also* Suppl. Sohnen Decl. ¶ 31, ECF No. 106-1.  Class counsel also litigated diligently on

6  behalf of the class, including in disputes about the enforcement of the arbitration clause, the

7  arbitration itself, during mediation, and now, in class certification.  *See* Prev. Order at 2.

8     Second, the mediation that produced the proposed settlement agreement bears several

9  hallmarks of arm's-length negotiations.  *See* Fed. R. Civ. P. 23(e)(2)(B).  The parties began

10  negotiating a potential settlement agreement only after vigorous litigation over whether the

11  arbitration clause was enforceable and only after conducting discovery in that arbitration.  Prev.

12  Order at 11.  They selected a well-known and capable mediator.  *See* Sohnen Decl. ¶ 15, ECF

13  No. 87-2; Prev. Order at 2.  They did not reach an agreement immediately, but rather after nearly

14  a month of follow-up negotiations.  *See* Prev. Order at 2.

15     Third, the method the settlement agreement uses to distribute the net award is objective

16  and lends support to counsel's claim that the agreement treats class members equitably.  *See* Fed.

17  R. Civ. P. 23(e)(2)(D).  First, $10,000 is allocated to the claims bought by the plaintiffs as private

18  attorneys general on California's behalf.  *See* Settlement Agmt. at 14.  After the statutory $7,500

19  payment to the California Labor and Workforce Development Agency, the remaining $2,500 is

20  distributed to the class pro rata using the number of workweeks each class member actively

21  worked.  *See id.*  Of the remaining net award, 75 percent is allocated to the claims arising under

22  California law, which make up the majority of those claims in the complaint.  *See id.* at 14–15;

23  First Am. Compl. ¶¶ 25–89, ECF No. 37.  That 75 percent is divided again among the class, also

24  using workweeks as an objective indicator of the value of each class member's claims.  *See*

25  Settlement Agmt. at 15.  The remainder of the net award is allocated to the claims by plaintiffs

26  who opted into the federal Fair Labor Standards Act collective action.  *See id.*  This scheme will

---

[1] Mr. Muniz passed away, and the court approved the substitution of the representative of his estate, Lynett Ann Muniz, as a named plaintiff.  *See* Order (Sept. 4, 2020), ECF No. 100.

1   not result in any starkly larger or smaller awards to any particular class members: the minimum

2   award is $25; the average award is approximately $2,000, and the maximum award is a little less

3   than $6,000.  Brunner Decl. ¶ 13.  No class members opted out of this compensation scheme,

4   none objected to it, and only one class member submitted a dispute, which was unsuccessful.  *See*

5   *id.* ¶¶ 15–17; Second Suppl. Sohnen Decl. ¶ 4.

6       Fourth, the settlement agreement offers class members monetary compensation sooner

7   than they would receive it if the case were litigated through the completion of arbitration, the

8   judicial action, any motion practice related to confirmation of the arbitration, and any appeals.

9   *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  Direct payment of a monetary award is an effective means of

10  compensation for the class's injuries, which all are related to wages.  *See* Fed. R. Civ. P.

11  23(e)(2)(C)(ii).  It is unlikely the settlement agreement will squelch meritorious claims.  No other

12  action concerns the same or similar claims, and all those whom the agreement binds are likely to

13  be included in the distribution.  The parties used employment records to locate class members and

14  determine the amount of their individual compensation.  *Cf. Kim*, 8 F.4th at 1179 (reversing final

15  approval when settlement released strong claims).  In other words, this class does not present the

16  dangers of claims-made distributions, which the Ninth Circuit recently summarized.  *See Briseño*,

17  998 F.3d at 1020.

18      Fifth, to the extent the remaining *Churchill* factors are relevant here, they weigh in favor

19  of approval or are neutral.  *See Kim*, 8 F.4th at 1178 (listing "the experience and views of

20  counsel," "the presence of a governmental participant," and "the reaction of the class members of

21  the proposed settlement" (quoting verbatim *Bluetooth*, 654 F.3d at 946).

22      As this court wrote in its previous order, however, the net award to class members is much

23  smaller than their attorneys' estimate of the value of their claims.  *See* Prev. Order at 12.  Under

24  the proposed settlement agreement, about $170,000 will go to the class to compensate injuries

25  their attorneys have estimated at $1.6 million.  *See id.*  Although this discount is substantial, after

26  further reviewing the record and the parties' confidential submissions, the court finds that the

27  settlement agreement represents a rational compromise.  Without a settlement, the plaintiffs

28  would have had to overcome several nontrivial obstacles:

- The Ninth Circuit recently upheld the Federal Motor Carrier Safety Administration's decision that some of the California laws in question here were preempted in ways that could reduce the expected value of the plaintiffs' claims. *See generally Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841 (9th Cir. 2021), *cert. denied*, ___ U.S. ___, 2021 WL 4507755 (U.S. Oct. 4, 2021).

- Several courts have recently held that California's wage statement laws do not permit some aspects of the plaintiffs' claims to relief for unpaid wages. *See, e.g.*, *Castro v. Wal-Mart, Inc.*, No. 20-00928, 2020 WL 4748167, at *2 (E.D. Cal. Aug. 17, 2020) (citing *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1335–37 (2018)).

- The record includes no documentary evidence showing how much time employees spent on tasks that did not contribute to their pay, but which were mandatory. *See* Suppl. Sohnen Decl. ¶ 13.  As a result, for employees to prove they were not compensated for this time, they would have needed to conduct employee surveys, which would have taken time and money. *Id.* ¶¶ 13–15.  Relying on surveys would also have been a risky proposition in this case.  Years have passed since the alleged violations, so employees' memories are likely poor, could be contradictory, and may be subject to reliability challenges.  Survey response rates might also be low, so survey results might not have been reliable in statistical terms.

- At least some evidence suggests the defendants did not force drivers to forego meal or rest breaks.  For example, drivers signed cards acknowledging the company's policy did not allow employees to work more than five hours without a meal break.  Some drivers may also have agreed to take meals on duty.

- Some class members may have waived their rights to participate in class litigation.

- If this case went forward, the defendants might have successfully proved that wages exceeded minimum requirements even if some required tasks did not

1    contribute to the employees' overall pay.  The defendants would also argue that

2    drivers could request compensation for time they were on duty but could not work,

3    for example, if they were stuck in traffic.

4  •  The plaintiffs believe that without the proposed settlement agreement, they would

5    face stiff opposition if they attempted to litigate this case on a classwide or

6    representative basis.  *See, e.g.*, Suppl. Sohnen Decl. ¶ 10.  The court has reviewed

7    the parties' confidential mediation briefs and declarations and is not persuaded that

8    a class certification motion would be as difficult an obstacle as the plaintiffs now

9    suggest.  Even if that legal risk were low, however, a contested motion to certify a

10   class would be expensive and time-consuming.  The settlement agreement short-

11   circuits that motion practice and thus saves time and money, so a discount to the

12   award is rational.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring court to consider

13   any "costs" and "delay" avoided by settlement agreement).

14  •  Finally, the plaintiffs point out that this court's previous orders do not preclude

15   Black Diamond and Basic Resources from attempting to prove in the arbitration or

16   elsewhere that they were not corporate alter egos.  *See* Order (Mar. 28, 2018) at 7,

17   ECF No. 79; Suppl. Sohnen Decl. ¶¶ 5–9.  The court has reviewed the parties'

18   private mediation briefs and is not persuaded that the defendants would have

19   succeeded in reasserting that position in this court, but an arbitrator or appellate

20   panel might conclude differently.  At a minimum, the settlement agreement avoids

21   uncertainty and further litigation, so a discount is rational to recognize these risks.

22   On balance, the settlement agreement permits class members to receive a certain sum now

23   rather than an uncertain sum later.  After considering the parties' confidential mediation briefs

24   and counsel's analysis, the court is satisfied that the total value of the proposed settlement is not

25   so steeply discounted that it is not "adequate" under Rule 23(e)(2).

26   The court must also ensure the net settlement value remains "reasonable" after reductions

27   for agreed attorneys' fees.  *See Kim*, 8 F.4th at 1180; *Briseño*, 998 F.3d at 1022, 1024–26.  As the

28   court wrote in its previous order, the proposed fee award of $112,200 is relatively large compared

1    to the net settlement amount of about $170,000.  *See* Prev. Order at 12–13.  As explained below,

2    however, the court has reviewed counsel's further submissions and is now satisfied that the

3    proposed fee award is reasonable overall.  *See infra* section V.  The fee is also much lower in

4    comparison to the net award than those that have recently provoked rebukes by reviewing courts.

5    *Cf. Kim*, 8 F.4th at 1180–82 (reversing district court's approval of fee award much larger than

6    amount awarded to class); *Briseño*, 998 F.3d at 1020–22, 1028–29 (same).

7            The court also finds the settlement agreement to be reasonable despite the substantial

8    incentive awards to the named plaintiffs.  Courts may consider several factors when deciding

9    whether to award an incentive fee to a named plaintiff: (1) "the risk to the class representative in

10   commencing suit, both financial and otherwise"; (2) "the notoriety and personal difficulties

11   encountered by the class representative;" (3) "the amount of time and effort spent by the class

12   representative"; (4) "the duration of the litigation;" and (5) "the personal benefit (or lack thereof)

13   enjoyed by the class representative as a result of the litigation."  *Smothers v. NorthStar Alarm*

14   *Servs., LLC*, No. 17-00548, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31, 2020) (quoting *Van*

15   *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).  Here, the named

16   plaintiffs spent many hours on this case, which has gone on for some time and not rewarded them

17   with any personal benefits outside of the benefits to the class as a whole.  Although this case was

18   not widely publicized, the named plaintiffs have attached themselves to it, and as a result, they

19   may face negative consequences from any employers who assume past participation in litigation

20   is a potential liability.  The amount of the incentive award is also reasonable given the size of the

21   net award to class members, both in total and on average.  *See id.* *12–13 (approving $10,000

22   incentive award and collecting authority); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*,

23   No. 13-0474, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (approving $8,000 incentive

24   award and collecting authority).

25           The proposed cost reimbursement is also reasonable.  The amount, $11,307.99, is modest

26   for a case of so many years' duration.  *See Pena v. Taylor Farms Pac., Inc.*, No. 13-1282, 2021

27   WL 916257, at *7 (E.D. Cal. Mar. 10, 2021) (approving an expenses award of more than

28   $210,000 in a wage and hour case that had been pending for more than eight years).

1    Finally, only one of the three commonly cited "red flags" of collusion might be cause for

2    concern here: the parties' clear-sailing agreement.  *See Kim*, 8 F.4th at 1180; *Bluetooth*, 654 F.3d

3    at 947.  The court is persuaded, however, after reviewing the parties' supplemental submissions,

4    that the risk of collusion is low despite the defendants' agreement not to contest the proposed

5    attorneys' fees, costs, and incentive awards.  The agreed amounts are relatively modest, and any

6    amounts not awarded would revert to the class.

7    **III.   FLSA COLLECTIVE ACTION**

8    For the reasons discussed above, the court also approves the terms of the proposed FLSA

9    collective action settlement.  The members of the proposed collective action assert violations of

10   the FLSA, are "similarly situated," have affirmatively opted in, and the dispute here is "bona

11   fide" under the commonly applied test.  *See Lynn's Food Stores, Inc. v. United States*,

12   679 F.2d 1350, 1355 (11th Cir. 1982); *see also* Prev. Order at 5 (summarizing applicable law);

13   *Maciel v. Bar 20 Dairy, LLC*, No. 17-00902, 2018 WL 5291969, at *4–5 (E.D. Cal. Oct. 23, 21

14   2018) (same).

15   **IV.   PAGA CLAIMS**

16   "An employee bringing a PAGA action does so as the proxy or agent of the state's labor

17   law enforcement agencies, . . . who are the real parties in interest."  *Sakkab v. Luxottica Retail N.*

18   *Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (citations omitted).  Thus, "[a]n action brought under

19   the PAGA is a type of qui tam action."  *Id.* at 429.  Because a settlement of PAGA claims

20   compromises a claim that could otherwise be brought by the state, the PAGA provides that

21   "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]."

22   Cal. Lab. Code § 2699(*l*)(2).[2]

23   The PAGA provides that courts may exercise their discretion to lower the amount of civil

24   penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise

25   would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  *Id.*

---

[2] Because this case was filed before July 1, 2016, the parties were not required to submit the proposed settlement agreement to the LWDA at the same time it was submitted to the court. *See* 2016 Cal. Legis. Serv. Ch. 31, § 189 (S.B. 836) (West).

13

1    § 2699(e)(2).  Because state law enforcement agencies are the "real parties in interest" for PAGA

2    claims, the court's task in reviewing the settlement is to ensure the state's interest in enforcing the

3    law is upheld.  *Sakkab*, 803 F.3d at 435.  But the PAGA does not establish any more specific

4    standard for evaluating PAGA settlements.  Nor has any California state court established a

5    "benchmark for PAGA settlements, either on their own terms or in relation to the recovery on

6    other claims in the action."  *Ramirez v. Benito Valley Farms, LLC*, No. 16-04708, 2017 WL

7    3670794, at *3 (N.D. Cal. Aug. 25, 2017) (quoting from LWDA response in *O'Connor v. Uber

8    Technologies Inc.*, 201 F. Supp. 3d 1110 (N.D. Cal. 2016)).

9         In the absence of such guidance, this court and at least one other California federal district

10   court have referred to the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

11   1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  *See*

12   *Decker v. AllStates Consulting Services, LLC*, No. 18-03216, 2020 WL 7769842, at *2 (E.D. Cal.

13   Dec. 30, 2020); *O'Connor*, 201 F. Supp. 3d at 1134–35.  These factors are not unique to class

14   action lawsuits.  They bear on the fairness of settlements involving many plaintiffs.  This court, as

15   it has before, finds these factors useful in evaluating a PAGA settlement.  And for the reasons

16   discussed above, those factors favor approval of the settlement agreement.

17   **V.    FEES AND COSTS**

18        Rule 23 permits a court to award "reasonable attorney's fees . . . that are authorized by

19   law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Even when the parties have agreed on

20   an amount, the court must award only reasonable attorneys' fees.  *See Bluetooth*, 654 F.3d at 941.

21   For claims arising under state law and the court's supplemental jurisdiction, such as this one, the

22   Ninth Circuit "has applied state law in determining not only the right to fees, but also in the

23   method of calculating fees."  *Mangold v. Cal. Public Util. Comm'n*, 67 F.3d 1470, 1478 (1995);

24   *see also Carey v. Maricopa Cty.*, 602 F. Supp. 2d 1132, 1135 (D. Ariz. 2009) ("A federal court

25   exercising supplemental jurisdiction over a state law claim is bound to apply state law in the same

26   manner it would were it sitting in diversity." (citing *United Mine Workers v. Gibbs*, 383 U.S. 715,

27   726 (1966))).  California courts permit the payment of attorneys' fees from a settlement.  *See*

28   *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977).

1    Federal district courts applying state law evaluate fee awards using two methods: (1) as a

2    percentage of the total settlement fund and (2) in light of the "lodestar," i.e., the product of a

3    reasonable hourly rate and a reasonable number of hours dedicated to the case. *Kim*, 8 F.4th at

4    1180.  District courts have discretion to use the method they find most fitting. *See Vizcaino v.*

5    *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Percentage awards are simple and

6    transparent, but they might be unreasonable.  A 25 percent fee, for example, might be either a

7    bonanza or a pittance depending on the size of the gross settlement award. *See Bluetooth*,

8    654 F.3d at 942.  The lodestar fee can therefore serve as both a "cross check" against and a

9    substitute for percentage-based awards. *See id.* at 944–45; *Espinosa v. Cal. Coll. of San Diego,*

10   *Inc.*, No. 17-0744, 2018 WL 1705955, at *8 (S.D. Cal. Apr. 9, 2018).  But in the end, however an

11   award is calculated, the reviewing court's goal is the same: "a reasonable fee to compensate

12   counsel for their efforts." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557–58 (2009)

13   (quotation marks, citations omitted).

14   Courts within this circuit have usually measured percentage awards against a 25 percent

15   benchmark. *See Bluetooth*, 654 F.3d at 942; *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-*

16   *in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (unpublished).  California state

17   courts have also referred to a 25 percent benchmark, but they have often been willing to approve

18   awards of up to 33 percent of the total fund. *See In re Consumer Privacy Cases*, 175 Cal. App.

19   4th 545, 557 n.13 (2009) (noting fees of up to one-third are frequently awarded but a "fee award

20   of 25 percent is the benchmark" for "common fund cases" (internal quotation and alteration

21   marks omitted)); *see also Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063,

22   2020 WL 5535399, at *8 (E.D. Cal. Sept. 15, 2020) (collecting authority).  Awards above the

23   25 percent benchmark may be appropriate "when counsel achieves exceptional results for the

24   class, undertakes extremely risky litigation, generates benefits for the class beyond simply the

25   cash settlement fund, or handles the case on a contingency basis." *Seguin v. County of Tulare*,

26   No. 16-01262, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (quotation marks omitted)

27   (citing *Vizcaino*, 290 F.3d at 1048–50).

28   /////

15

1    Here, although a 33 percent award is above the Ninth Circuit benchmark, the court finds it

2    is reasonable.  This case has been pending for many years, plaintiffs' counsel accepted

3    representation on a contingency basis, the defendants firmly contested the plaintiffs' claims, and

4    the class faced many legal and evidentiary obstacles.  Although the fee award is large in relative

5    terms, it is not a windfall in absolute terms.  *See Vizcaino*, 290 F.3d at 1048–50 (recognizing

6    higher-than-benchmark fee may be reasonable in lengthy risky case when counsel has accepted

7    representation on contingency basis, among other reasons).  Courts within this district have

8    approved awards of 33 percent or higher in roughly similar cases.  *See, e.g.*, *Pena*, 2021 WL

9    916257 at *5 (approving 35 percent award in wage and hour class action because case had been

10   hard-fought and lasted many years); *Barbosa v. Cargill Meat Sol'ns Corp.*, 297 F.R.D. 431, 450

11   (E.D. Cal. 2013) (collecting authority supporting 33 percent award); *Vasquez v. Coast Valley*

12   *Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (same).

13   A cross-check against the lodestar fee confirms the proposed fee award is reasonable.  The

14   first part of a lodestar cross-check is "determining how many hours were reasonably expended on

15   the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  The second

16   part is multiplying reasonably expended hours "by the prevailing local rate for an attorney of the

17   skill required to perform the litigation." *Id.*  "The court may then 'adjust' the award 'by an

18   appropriate positive or negative multiplier reflecting . . . the quality of representation, the benefit

19   obtained for the class, the complexity and novelty of the issues presented, and the risk of

20   nonpayment.'" *Kim*, 8 F.4th at 1180–81 (quoting *Bluetooth*, 654 F.3d at 941–42).

21   Here, class counsel tabulated the hours they dedicated to this litigation and noted which

22   attorneys devoted how many hours at what rates.  *See* Sohnen Decl. ¶¶ 43–50 & Ex. C, ECF

23   No. 105-2.  A skeptical client deciding whether to pay these bills would raise an eyebrow at many

24   entries on these records, which are often vague and sometimes questionable.  *See, e.g.*, Ex. C at 4

25   (recording 24 minutes' "[f]urther attention to informal discovery requests"); *id.* at 5 (recording 24

26   minutes' "[a]ttention to issues regarding Arbitrator"); *id.* at 6 (recording 45 minutes' "[a]ttention

27   to research on arbitration issues").  These records do not allow the court to reliably assess whether

28   time was spent unnecessarily.  That said, counsel's proposed hourly rates are roughly in line with

1  those ordinarily approved in this District in similar cases.  *Compare, e.g.*, *Smothers*, 2020 WL

2  1532058 at *9 ("Courts in the Eastern District have previously accepted hourly rates between

3  $370 and $495 for associates, though lower rates are more commonly approved."), *with, e.g.*,

4  Sohnen Decl. ¶ 44 (requesting hourly rate of $350 for attorney with six years' experience).  And

5  the total award, inclusive of fees for time recorded by non-lawyer staff, is approximately

6  $760,000.  *See id.* ¶¶ 43–50.  As a result, awarding counsel's proposed $112,200 fee is already

7  equivalent to slashing the award by more than 80 percent.  The court is not persuaded, after

8  reviewing the line-by-line billing records, that a steeper reduction would be justified or fair.  The

9  amount of the hypothetical lodestar award supports counsel's fee request and confirms it is

10  reasonable.

11  **VI.    CONCLUSION**

12      The court **grants** the motions for final approval and fees.  The parties are hereby ordered

13  to comply with and carry out the terms of the Settlement Agreement.  Every person in the

14  California Settlement Class shall be bound by the Settlement Agreement and be deemed to

15  release and forever discharge all Released State Law Claims, as set forth in the Settlement

16  Agreement.  Every person in the FLSA Settlement Class who filed a consent form with the court

17  or sent an opt-in claim form to the Settlement Administrator is an FLSA Settlement Class

18  Member and shall be bound by the Settlement Agreement and be deemed to release and forever

19  discharge all Released Federal Law Claims, as set forth in the Settlement Agreement.  Every

20  person in the PAGA Settlement Class shall be bound by the Settlement Agreement and be

21  deemed to release and forever discharge all Released PAGA Claims, as set forth in the Settlement

22  Agreement.

23      The court **retains jurisdiction** over the administration and effectuation of the Settlement

24  including, but not limited to, the ultimate disbursal to the participating Settlement Class

25  Members, payment of attorneys' fees and expenses, the service awards to the Class

26  Representatives, payment to the Settlement Administrator, and other issues related to this

27  Settlement.  Nothing in this order shall preclude any action to enforce the parties' obligations

28  /////

17

1    under the Settlement or under this order.  Plaintiff shall notify the court **within seven days** after

2    administration and effectuation of the settlement is complete.

3          This order resolves ECF Nos. 104 and 105.

4          IT IS SO ORDERED.

5    DATED:  November 3, 2021.

CHIEF UNITED STATES DISTRICT JUDGE